November Term, 1881.

CASE No. 1143.

STATE v. DODSON.

1. A motion for continuance is addressed solely to the discretion of the Circuit judge, and his ruling thereon is not appealable.
2. Whether a juror is indifferent in a cause is a matter of fact to be finally determined by the Circuit Court. As matter of law, a juror is not incompetent who has formed an opinion from what he has read in the newspapers, or heard, but whose mind would not be thereby influenced—who is not sensible of any bias or prejudice, and who would be governed by the evidence.
3. A prisoner cannot, in this court, object to the ruling of the Circuit judge that a juror was competent, when such juror was challenged by defendant, and he obtained his jury without exhausting his peremptory challenges.
4. The wife of a prisoner, on trial, is an incompetent witness in his behalf. *State* v. *Workman*, (5) 15 *S. C.* 541, approved.
5. The confession of one of the defendants implicating himself and others, is competent evidence against himself, and should be proved as made, including the names of his confederates as stated by him, the jury being instructed that it is evidence only against the party who made the confession. *State* v. *Workman*, (4) 15 *S. C.* 541, approved.
6. A party convicted of infamous crimes, and who has served out his sentence, is restored to his competency as a witness by a pardon afterwards granted.
7. While defendants' counsel were portraying to the jury the effect of a conviction, the trial judge, interrupting, cautioned the jury that their duty was to pass upon the facts regardless of the consequences of their verdict. *Held*, no error.
8. In an arson case, where no mitigating circumstances appeared in the evidence, this court will not grant a new trial, because that the Circuit judge neglected to charge the jury that the prisoners might be recommended to mercy under the act of 1878 (16 *Stat.* 631), and their punishment thereby mitigated—no request so to charge having been made of him.
9. The indictment charged the offense to have been committed by Rich Bates, and the verdict found Richard Bates guilty. *Held*, an immaterial variance.
10. Insufficiency of evidence is a ground of appeal which this court cannot consider in a criminal case.

Before HUDSON, J., Greenville, July, 1881.

This was an indictment against William Dodson, Pleasant Adams, Joseph Burton, Rich Bates and Fletcher Maddox, for

arson, in burning a large building in the city of Greenville, known as the Academy of Music, during one of the nights of 1879, the same being, at the time, occupied in part as a sleeping apartment. At the first trial, Fletcher Maddox pleaded guilty and was sentenced to be hung. The others were convicted and sentenced, but appealed to this court and obtained a reversal of the judgment. On their second trial, they were again convicted and sentenced, and again they appealed.

Omitting its statement of facts bearing upon grounds of appeal based upon the insufficiency of evidence in certain particulars, the report of the presiding judge was as follows:

An effort was made in behalf of defendants to have the case continued because of the absence of several (two) witnesses alleged to be material. These witnesses were shown by the return of the sheriff and by other evidence, to be absent from the State or not to be found, and one of them to be incompetent. The witnesses being without the jurisdiction of the court, in view of all the surrounding circumstances, I deemed it my duty, in the exercise of a sound discretion, to order the trial to proceed. From the information derived from the statements and argument of counsel, I then thought, and still think, that no injury was done the defendants in refusing this motion—which I could not have granted consistently with the rules of sound discretion, in view of the long time this charge had been pending, its previous tedious trial and the great uncertainty of ever obtaining the attendance of the witnesses.

The organization of the jury was greatly delayed and rendered very tedious by lengthy examinations and cross-examinations of each juror on his *voir dire* before being presented, and by the exercise of the right of challenge by each defendant separately. A number of persons stated on their *voir dire* that they had formed an opinion regarding the guilt or innocence of the prisoners, were biased by such opinion and felt that they could not stand indifferent in the case. The challenge for cause against them was of course sustained. Others stated that they had formed an opinion, but stated further that such opinion arose from what they had heard of the case or from the report of newspapers, which, however, would not in the least influence

their minds as jurors if sworn in the case. They stated that they were sensible of no bias or prejudice whatever, for or against the defendants or either of them, and would stand entirely indifferent and be governed alone by the evidence to be adduced. Answering thus, they were presented, but in every instance were challenged peremptorily, and no juror was empaneled except those who, on their *voir dire*, swore that they were without opinion in regard to the guilt or innocence of the accused—were entirely free from bias, and stood indifferent between the State and the prisoners at the bar. Such *boni et legales homines* and none others, were sworn as jurors in this case.

In the progress of the trial, the State's counsel offered in evidence the written statement and confession of the defendant, William Dodson ; to this the defendants' counsel objected, because the said Dodson had been previously convicted of two infamous offenses and had suffered punishment therefor. The court ruled that in no event could the confession of Dodson be evidence except as against himself, and its admissibility was not destroyed by reason of his infamy. If freely and voluntarily made, it should be admitted for what it might be, in the opinion of the jury, worth, as against Dodson and no other. It appearing to have been freely and voluntarily made by Dodson, and reduced to writing by another and signed by Dodson, the statement was admitted to be read by the jury, they being duly cautioned that it should not and must not be at all weighed by them, save only as against Dodson.

Fletcher Maddox, who had been jointly indicted with the other defendants, and pleaded guilty at the first trial, and against whom sentence of death had been pronounced, was tendered by the State as a witness for the prosecution. The counsel for the defendants objected that this witness not only had been sentenced to be hanged for this arson, but had been twice previously convicted of larceny, once for grand larceny, in 1879, and, subsequently, for petit larceny, for both of which offenses he had suffered the penalty of the law. To this the counsel for the State replied by producing a pardon in due form by the executive of the State for each of the crimes, and also a general pardon for

all past offenses against the laws of the State. No allegation nor proof was made of any offense save these crimes for which he held specific pardons.

I held that these pardons restored the competency of Maddox as a witness in our courts, but not his credibility. He stood as a competent witness, but whose credibility was impaired by infamy; but how far he was to be believed was a question for the jury. I remember no contest over the competency of any other witness offered by the State, and the exceptions and grounds of appeal make mention of no other.

On behalf of the defendants, Hattie Burton, wife of the defendant Joseph Burton, was offered as a witness, but objected to by counsel for the State. I held her incompetent. Joseph Burton being jointly indicted with the others, his wife, who is clearly incompetent to testify in his behalf, is, also, by the rules of evidence, excluded from testifying in behalf of his confederates and co-defendants.

The case is one of great importance; it excited, as is usual, great interest in the community, and brought forth the warmest zeal and highest powers of intellect of learned counsel for the State and defendants. A large number of witnesses appeared on the stand, and the voluminous testimony consumed much time in development. At the close of the argument I proceeded to deliver my charge to the jury. To them I carefully defined the crime of arson, and, in doing so, read the statutes of the State defining the offense. I earnestly cautioned them not to consider the statement and confession of Dodson, except as against himself, and that as against him, even, it was for them to say what weight they should attach to it.

In speaking of the witness Maddox, I told the jury, as I have stated above, that his testimony was before them as that of an infamous man and as an accomplice in this grave charge. It was for them to say what credit should be given to his testimony; and it was my duty to tell them, that whilst it is lawful to convict upon the uncorroborated testimony of an accomplice, yet it is unsafe to do so, and that they should seek for facts and circumstances, established by credible witnesses, in corroboration of Maddox before believing him. In my entire charge, I rigidly

confined myself to my strict duty in expounding the law, avoiding comment on the testimony, and leaving the facts of the case entirely to the jury. No exception at the time was taken to my charge by either side, nor did the counsel for the defendants make any request to charge any legal proposition; nor was I requested to call the attention of the jury to any statute prescribing the punishment for the offense.

The jury rendered a verdict of guilty against each defendant on trial, and their counsel, upon the grounds set forth in the proposed case, and which need not be here repeated, moved the court for a new trial, and in arrest of judgment. I refused the motion and pronounced against the convicts sentence of death.

The motion for a new trial and in arrest of judgment, is now renewed before the Supreme Court, upon the grounds urged before me. The case as proposed by the appellants, with the solicitor's allowances and disallowances, comes to me for settlement and for my report. Perhaps I cannot better complete this, my report, than by noticing *seriatim* but briefly the appellants' grounds of appeal in order merely to correct misconceptions and errors of fact, and to place the case in its true light before the Supreme Court.

I remark on ground of motion for new trial:

1. The rule observed in presentation of jurors has been sufficiently explained. None were presented who did not swear that they were indifferent, and could give the defendants an impartial trial, notwithstanding impressions made upon their minds from reports and rumors, and no juror was sworn who had formed any opinion at all, or who expressed the least bias.

2. Hattie Burton was held an incompetent witness, because she was the wife of Joseph Burton, a co-defendant with the others—a fact which the appellants' counsel omits to state.

3. The admission of William Dodson's statement and confession as evidence against himself alone, has been explained.

4. No further explanation is required as to the competency of Fletcher Maddox as a witness. Specific pardons restored his competency.

5. This ground is erroneous in its statement. The court did not refuse to allow the solicitor to point out the statute upon

which the indictment was based. It was pointed out to Mr. Stokes by the solicitor, and it was read by the court in charging the jury.

6. This ground arises from misapprehension. Mr. Stokes, in the heat of argument, was in eloquent but extravagant terms urging upon the jury that, if convicted, the defendants would be hanged, and that their innocent blood would be upon the hands of the jury. He had said much as to the severity of the punishment, when I interrupted him only so far as to remind him that the jury were not responsible for the law; they must not be frightened out of propriety by the severity of the punishment.

7. This exception is erroneous in representing me as giving the same instruction as to the confession of Dodson and testimony of Maddox. It fails to draw the distinction. Dodson's confession was carefully restricted as affecting him alone. The testimony of Maddox, affecting all, the jury were told, should be corroborated, as I have explained.

8. So far as the recommendation of mercy is concerned, it is the province of the jury in all cases to incorporate it in their verdict. There was nothing in the evidence tending to mitigate the offense of any one of these men, if guilty; and I suppose this is the reason why no mention of the matter of mercy was made by the counsel for the State, nor for the defendants, nor by the court. In fact, so frightful was the arson, that the whole burden of the argument, both for the State and the defense, was, that if guilty, they must be hanged. And this fate was so strongly held out by Mr. Stokes *in terrorem* over the jury as to call for the interruption by the court above stated. It was competent for defendants' counsel to plead for and to urge mercy in behalf of all or either of them, and to read them the statute. It was competent for him to ask the court to instruct them upon their power in this respect, and its consequence if exercised. This he failed to do, and cannot now be admitted to charge the omission to the court.

*Messrs. E. F. Stokes* and *J. T. Nix,* for appellants.

*Messrs. Solicitor Orr* and *W. E. Earle,* contra.

February 21st, 1882. The opinion of the court was delivered by

McIVER, A. J. The appellants in this case have again been convicted of the crime of arson, this court having granted them a new trial, after the former conviction, upon grounds stated in 14 *S. C.* 628, and they now appeal again upon various grounds.

We do not propose to recite the various grounds as set out in the " case," some of them being mere repetitions of others, but will proceed to consider and determine the various questions which we understand to be made by the several grounds of appeal.

The first question raised is whether the Circuit judge erred in refusing the motion to continue the case. As has been repeatedly decided, this is a question addressed solely to the discretion of the Circuit judge, and is not reviewable on appeal. We may add, however, that it seems to us that the discretion of the Circuit judge was very properly exercised in refusing the motion to continue.

The next question is whether the Circuit judge erred in allowing certain jurors to be presented to the prisoners, who, when examined on their *voir dire*, stated that they had formed an opinion in reference to the case from what they had heard or seen in the newspapers, which, however, would not in the least influence their minds as jurors; that they were not sensible of any bias or prejudice whatever, either for or against the prisoners, and would be governed by the evidence adduced in the case. The statute, after providing that the court shall, upon the motion of either party to the cause, examine any person called as a juror upon his *voir dire*, declares that: "If it appears to the court that the juror is not indifferent in the cause, he shall be placed aside as to the trial of that cause, and another shall be called." *Gen. Stat.* Ch. CXI. § 25, p. 523.

This would seem to vest the power of determining the question of fact, as to whether the juror was indifferent, in the hands of the court called upon to try the case, and we do not see how this court could undertake to review such determination. But even were this not so, we see no error in the course pursued by the Circuit judge. Any other course would have the effect of

excluding from the jury box, in any case of such magnitude or public interest as would be likely to attract attention, the very class of persons who would be best qualified to occupy that position, for in cases of that character it would be difficult to find persons of ordinary intelligence who had not received some impressions in regard to a case from what they had heard or read in the newspapers. If, however, the Circuit judge did err in allowing such persons to be presented as jurors, such error could not avail the appellants here, for they were not prejudiced thereby, inasmuch as it appears that none of the jurors who had so expressed themselves were sworn in the case, but that all of them were peremptorily challenged, and as it was admitted in the argument here that the prisoners did not exhaust their peremptory challenges. *State* v. *Price*, 10 *Rich.* 356; *State* v. *McQuaige*, 5 *S. C.* 431; *State* v. *Gill*, 14 *Id.* 412.

The next questions as to the competency of Hattie Burton as a witness for the defendants, and as to the competency of the confessions of Dodson, are fully disposed of by the recent decision in the case of *State* v. *Workman*, 15 *S. C.* 540. Hattie Burton was the wife of one of the prisoners, Joseph Burton, and was offered " to prove the whereabouts of Joseph Burton " on the night the arson was alleged to have been committed, for which purpose she was clearly incompetent. The confession of Dodson was held to be competent evidence against him by the former decision in this case; and the fact that in such confession he used the names of the other defendants did not require that it should have been excluded, or that it should be read omitting the names of the other defendants, as was distinctly decided in the case of *State* v. *Workman, supra.* It was, however, the duty of the judge before whom the case was on trial to instruct the jury that such confession could only be regarded as evidence against the person who made it, and not against the other defendants. But this duty was fully performed by the judge who tried this case, and the jury were explicitly cautioned that the confession of Dodson was evidence only against him, and " should not and must not be at all weighed by them save only as against Dodson."

The next inquiry is whether the competency of Maddox as a witness was restored by the pardons exhibited. It is laid down

in all the elementary writers on evidence that a pardon restores the competency of a witness who has been convicted of an infamous crime, even if the entire punishment has been suffered before the pardon is granted. 1 *Greenl. Evid.* § 377 ; 2 *Stark. Ev.* 722.

The next objection raised by the appellants—that the Circuit judge " erred in refusing to require the solicitor to point out the exact statute under which the prisoners were indicted, and to read the same to the jury,"—seems to be based upon a misapprehension of the facts, and we need not, therefore, consider whether there would have been any error of law if the Circuit judge had refused to require the solicitor so to do, for it appears that the statute was pointed out and attention called to the amendment increasing the punishment of the offense charged.

The several grounds of appeal which complain that the Circuit judge checked one of the counsel for the prisoners in pressing upon the jury the idea that in case their verdict should be guilty the prisoners would be hanged, and that the jury were instructed that they had nothing whatever to do with the consequences of their verdict, but that their simple and sole duty was to determine whether the prisoners were guilty or not guilty, seem to be based upon a misconception of the judge's charge. The object of these grounds is to convey the impression that the judge deprived the jury of the right to consider anything but the simple question of fact whether the prisoners were guilty of burning the house in question, without any reference to the degree of such guilt, or whether there were any such mitigating circumstances in the case as would justify the jury in finding such special verdict as would, under the act of 1878 (16 *Stat.* 631), exempt the prisoners from the extreme penalty of the law.

That such was not the intention of the charge, and that it could not have been so construed, we think is manifest from the report of the Circuit judge. In checking the counsel, as it is called, the manifest purpose of the judge was simply to remind the jury that they would not be responsible for the consequences flowing from their verdict, and that they should not be frightened from their propriety by any gloomy visions which counsel, in their zeal in behalf of their clients, might present before them,

but that their duty was to pass upon the facts, uninfluenced by the consequences, from the expression of their honest convictions. This is quite common in cases of this character, and we cannot say that it is improper. Certainly we can see no such error of law in it as would justify our interference. It was not charging the jury upon the facts of the case, but, at most, was simply an invocation to the jury to do their duty regardless of the consequences.

The next question is whether there was any error of law on the part of the Circuit judge in omitting to inform the jury that they had the power, under the act of 1878, to bring in a special verdict recommending the prisoners to mercy. As has been recently determined in the case of *State* v. *Gill,* 14 *S. C.* 410, the jury always had this power, and the only effect of the provision in the act above cited is to declare what shall be the definite legal effect of the exercise of this power in the cases mentioned in the act. There are very few instances—we doubt if there are any—in which such recommendation has not been respected by the proper authority, and yet we have never heard it suggested before that the omission of a judge to inform the jury that they had such a power would constitute such an error of law as could be corrected by this court; and we can see no reason why it should be so regarded now, especially when, as in this case, there was no request so to instruct the jury. For, while in capital cases this court, *in favorem vitæ,* will not insist upon the rule requiring a party who wishes to take advantage of any omission to charge to show a request to charge the matter omitted, but, as is said in *State* v. *McNinch,* 12 *S. C.* 96, will "take notice, in behalf of the accused, of any error apparent upon the record by which the prisoner has been deprived of any of the substantial means of enjoying a fair and impartial trial," yet this does not mean that any immaterial error or omission will thus be noticed. It must be such an error or omission as is substantial or material. Hence, if the error or omission is merely theoretical or immaterial it will not avail the appellant here.

If the judge should omit to charge some undeniable proposition, which did not appear to be applicable to the case as made, it could not avail the appellant here. For example: If, upon the trial of a person under an indictment for murder, where the

evidence was that the deed was done by deliberately administering poison, or¹ that the prisoner, after making express threats, lay in wait for his victim, the judge should omit to instruct the jury that under an indictment for murder they had the power to convict the prisoner of manslaughter, which would reduce the punishment from death to confinement in the penitentiary, such an omission would certainly not be such an error of law as would justify this court in granting a new trial. For, while it is undeniably true, as an abstract legal proposition, that upon an indictment for murder the jury have the power to render a verdict of manslaughter, the legal effect of which would be to reduce the punishment of the person so convicted, yet the omission so to charge would not be such an error of law as this court would take notice of without a request so to charge, because it would be wholly inapplicable and immaterial to the case.

So here, according to the judge's report, and from the evidence submitted here, it does not seem that there was anything whatever in the case as made below, calling for such an instruction to the jury, as it is now contended should have been given. So far as we are informed there were no mitigating circumstances in the case. The sole question was whether the persons charged were the persons who did the deed, and it seemed to be conceded, even in the argument of the counsel for the prisoners, that if they were guilty they would be hanged. This being the case, in the absence of any request so to instruct the jury, we do not think the omission of the judge to inform the jury that they had the power to bring in a verdict of guilty accompanied by a recommendation to mercy was such an error of law as deprived the prisoners of any of the substantial means of obtaining a fair and impartial trial. A judge is not bound to lay before the jury *all* the law which might, under *any* circumstances, apply to the offense charged but only such principles as are applicable to the case as made by the evidence; and if the party charged desires to have any other principles of law laid down to the jury it is his duty to request the judge to instruct the jury as to such other propositions as he may desire the jury to be informed of.

The case of *State* v. *Nicholas*, 2 *Strobh.* 278, which is mainly relied upon by the counsel for appellants, we do not think

applicable to the case now under consideration. That was a case in which a slave was convicted, before a court of magistrates and freeholders, under the act of 1740, which declared that if any slave "shall grievously wound, maim or bruise any white person," such slave should suffer death. The Court of Appeals held that a new trial should be granted where the freeholders who tried the case were ignorant of the existence of the act of 1751, which provided that in any trial for the violation of any of the provisions of the act of 1740 it should be lawful "for the justices and freeholders upon such trial, or a majority of them, to mitigate the punishment to be inflicted upon the offender in all and every case where any favorable circumstances shall appear and induce them to be of opinion that such punishment ought to be mitigated." In that case it was made to appear that the freeholders were ignorant of the law giving them power to reduce the punishment, and it is manifest that it was a very proper case for the exercise of that power. For it was at least doubtful whether the injuries inflicted amounted to a grievously wounding, maiming or bruising within the meaning of the statute, it being alleged that the wounds were merely superficial or flesh wounds, not attended with any peril to life or limb, and not followed by any permanent evil consequences.

Here, however, there is not only no evidence that the jury were ignorant of their power to recommend to mercy, but the presumption is the other way, as it can scarcely be supposed that the jury were ignorant of the fact that they possessed a power which has been exercised by juries, whenever so minded, ever since the foundation of our judicial system; and, as we have said, there does not appear to be anything in the circumstances calling for the exercise of such a power.

The next objection is based upon an alleged informality in the verdict, or rather a variance between the Christian name of one of the prisoners, as written in the indictment and in the verdict— one of the prisoners being designated in the indictment as Rich Bates, while in the verdict his name is written Richard Bates. This we think wholly immaterial, for the names might be rejected altogether—certainly the Christian names—and the verdict would be sufficient.

Various other grounds of appeal are based upon an alleged insufficiency of evidence, but this has been so often ruled upon by this court as not constituting any ground of which this court can take notice, that it is unnecessary to cite the cases here.

The judgment of this court is that the judgment of the Circuit Court be affirmed, and that the case be remanded to that court for the purpose of having a new day assigned for the execution of the sentence heretofore passed.

SIMPSON, C. J., and McGOWAN, A. J., concurred.