19897

The STATE, Respondent, v. Leon PATTERSON, Appellant

(209 S. E. (2d) 39)

*Messrs. Coming B. Gibbs, Jr.,* and *Dan M. David,* of Charleston, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Robert M. Ariail, Asst. Atty. Gen.,* of Columbia, and *Robert B. Wallace, Sol.,* and *A. Arthur Rosenblum,* of Charleston, *for Respondent,*

October 9, 1974.

BRAILSFORD, Justice:

Leon Patterson appeals from his conviction of murder. The threshold question is whether the court erred in admitting in evidence the defendant's confession, without which the evidence was insufficient to sustain the verdict.

On February 14, 1973, at about 7:00 P. M., the operator of a filling station on St. Phillips Street in Charleston was shot to death during an attempted robbery. A witness who was parked nearby saw three men enter the filling station, heard a pistol shot, and saw the attendant fall. The three men emerged from the station and ran away. The witness called the police who came to the scene.

After the shooting, the appellant went to a nearby pool room and snack bar where Lydia Brown, a woman with whom he lived, was employed. [1] While there, he gave Lydia a pistol to keep for him and talked with an investigating policeman. After closing time, appellant and Lydia, accompanied by one Buster Farr, went to her apartment, where she and appellant spent the night.

On February 16, 1973, Lydia was arrested on a warrant charging her as an accessory to the murder. On learning of this and that a warrant had been issued for him, appellant turned himself in at the police station at about 7:30 P. M. on the day of her arrest which was a Friday. (Both warrants were based upon information given to the police by an informer whose identity is not disclosed by the record.) Next morning, the appellant, Lydia and Buster Farr, who, inferentially, was also under arrest, were taken to SLED Headquarters in Columbia where polygraph tests were given to them. After taking the test, and after inquiring as

---

[1] Appellant and Lydia were married the week of the trial.

to the penalty for accessory to murder and after conferring privately with Lydia, appellant made an inculpatory statement which was later reduced to writing and signed by him. Upon the return of the party to Charleston on the evening of February 17, the magistrate who had issued the warrants authorized Lydia's release.

Appellant's confession led to discovery of a pistol which he had sold on the day following the homicide and which was identified by an expert as the death weapon. The confession and weapon were virtually the only evidence linking appellant to the crime.

At the outset of the trial, the experienced judge held a lengthy hearing in the absence of the jury to determine the voluntariness of the confession and whether appellant had been accorded the procedural safeguards required by the often-cited *Miranda* decision of the Supreme Court of the United States, 384 U. S. 436, 86 S. Ct. 1602,' 16 L. Ed. (2d) 694, 10 A. L. R. (3d) 974 (1966). The judge found that the appellant had been fully advised of all of his rights, that he understood those rights, and deliberately waived them, and that the proffered statement was freely and voluntarily made by the appellant. Counsel for appellant recognizes that these findings are conclusive on appeal if supported by substantial evidence, but contends that the evidence viewed most favorably to the State establishes involuntariness. We disagree.

It is undisputed that at every stage of his interrogation, from his surrender in Charleston to his signing of the statement in Columbia, appellant was distinctly and fully admonished concerning his *Miranda* rights, both orally and in writing. Furthermore, appellant was not treading new ground. He was an experienced accused, and, as his testimony makes clear and the trial judge found, he fully understood his rights as an accused being subjected to custodial interrogation.

Counsel, however, argues that the confession must be held involuntary because of the concurrence of the following circumstances.

When advised of his right to counsel at the police station on Friday evening, the appellant stated that he could not afford a lawyer, inferentially requesting that he be furnished one. He was then told that one would be appointed for him when he was taken before the magistrate.

Although the magistrate was available in his office on Saturday morning, the appellant was taken to Columbia for the polygraph test, instead of to the magistrate for the appointment of counsel, with consequent delay in such appointment until Monday morning.

Appellant was told that he had failed the polygraph test, and that if he would tell the truth, the officers might be able to arrange for the release of Lydia Brown.

Of course, the appellant had the right to be taken before a magistrate on the morning after his arrest and to have the advice of counsel before being subjected to the polygraph test or otherwise interrogated. However, he expressly waived these rights and elected to go to Columbia to take the lie detector test, which was already scheduled for Lydia and Farr, without awaiting the advice of counsel.

The appellant does not contend that he was mistreated in any way, or subjected to intensive questioning, or even that the officers were overbearing. Instead, he candidly admits that he was treated with civility. Knowing, according to his testimony, that he "would get life" if he confessed, he assigns as his sole reason for doing so that he "didn't want to see (Lydia) in jail." [2]

---

[2] The appellant testified that the officers promised that Lydia would be released if he gave them a statement, inferentially, exonerating her. They denied having made such a promise, but freely admit having suggested that her release would be the likely result of a statement by him which exonerated her.

The appellant, better than anyone, knew that Lydia, although in lawful custody, was innocent. He had no reason to think that she would be framed and does not profess to have harbored such fear. Surely the trial judge was not bound to believe that his confession was the product of his concern for Lydia's well-being rather than of his own free will. At most, appellant's testimony in this respect raised an issue for the trier of the facts, here the trial judge. *Cf. State v. Melton,* 186 S. C. 478, 196 S. E. 181 (1938) ; Annot., 80 A. L. R. (2d) 1428 (1961). His conclusion that appellant's confession was freely and voluntarily made is supported by abundant evidence and is binding on us.

Several other questions are urged by appellant as entitling him to a new trial, on which trial he claims the right to have the jury pass upon whether the homicide was involuntary manslaughter, which the trial judge declined to submit. The claim stems from the statement in appellant's confession that when he cocked the pistol, it went off; that he "didn't mean to shoot the man." We need not consider the astute argument of counsel, who, by appointment, ably represented appellant in the court below and on this appeal, on his entitlement to this submission. At the subsequent trial of an alleged confederate, the appellant took the stand as a witness for the accused, and, after repeated warnings from the bench and by his own counsel, who were called to the courtroom to advise him, that he did not have to testify and that to do so might prejudice his appeal, he testified in the most explicit terms that he murdered the victim in the course of an attempted robbery. If there was error in the court's refusal to submit involuntary manslaughter, which we do not concede, appellant has waived the error by his subsequent explicit testimony.[3] If it be said that the conflict between the original

---

[3] Indeed, appellant testified that he was no longer appealing his conviction; that he had instructed his lawyers to "stop" it.

statement and appellant's subsequent testimony should be resolved by a jury, the ready answer is that on retrial no honest and rational jury could fail to convict the appellant of murder. For this reason, we decline to consider whether the court erred in refusing to submit the issue of involuntary manslaughter to the jury. For like reason, we decline to consider the other grounds of appeal which, if sustained, could only result in the futility of another trial of a defendant who is inextricably tied to the death weapon, and who, since his conviction of murder, has freely and voluntarily declared his guilt in a most solemn fashion.

■ Appellant also charges that the court erred in settling the case by including in the transcript appellant's testimony at the subsequent trial of his alleged confederate. We agree that this testimony was irrelevant to the question of the admissibility of appellant's original confession, and with it the murder weapon, which depended upon the voluntariness of the confession, not upon its truth. We resolved that issue against appellant on the record of his trial alone. If it had been decided in his favor, there would have been no evidence to support the conviction, and appellant, despite his post-trial admissions, would have been entilted to a reversal and discharge from custody. However, to the extent already stated, we find appellant's sworn admissions at the subsequent trial relevant to disposition of the remaining assignments of error.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.