## 20005

The STATE, Respondent, v. James D. MOTES, Appellant

(215 S. E. (2d) 190)

*Messrs. Costa M. Pleicones* and *James C. Cordell,* of Columbia, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen., Joseph R. Barker, Asst. Atty. Gen., Brian P. Gibbs, Staff Atty.,* and *John W. Foard, Jr., Sol.,* of Columbia, *for Respondent,*

May 5, 1975.

LEWIS, Justice:

The Defendant, James David Motes, has appealed from his conviction and sentence for murder. He contends that he should be granted a new trial because of several alleged trial errors.

The first question concerns the alleged prejudicial effect of certain questions propounded to the defendant by the trial judge.

Defendant testified that he knew nothing of the killing of the deceased and that he was at home at the time of the occurrence. It developed, however, that defendant, against the advice of his attorney, had made a statement to the officers that he (Defendant) had committed the crime. He stated that he made the confession in order to get the officers to release his wife who was also being held in jail in connection with the matter. After cross-examination by the Solicitor, the trial judge questioned the defendant concerning the statement, particularly with reference to the fact that defendant had made the statement after being advised not to do so by his attorney and also as to defendant's source of knowledge of certain facts of the crime, since his defense was that he was not present and knew nothing about how it occurred. It is contended that the questions asked by the trial judge were prejudicial and that defendant's motion for a mistrial on that ground should have been granted.

We fail to find the claimed prejudice in the examination of the witness by the court. The questions asked were relevant and not suggestive of any opinion of the trial judge. While the inquiries by the trial judge were upon a sensitive issue in the case and did not serve to improve defendant's claim of alibi, we think, under this record, the question may be properly placed within the category of inquiries made by the court in the performance of its duty to bring out the truth of the matters charged against the defendant. As such, no legal prejudice resulted.

It is next contended that the trial judge erred in allowing the wife of defendant to testify against him.

The State called the wife of defendant as a voluntary witness against him and, over defendant's objection, the wife was permitted to testify that she and the defendant went to a poolroom on the night in question where they had an altercation with the deceased, and then returned to their home where defendant procured a pistol, forcing her to drive him back to the poolroom where he shot the deceased. The wife testified that she was forced, under threats of death by the husband, to accompany him on the return trip to the poolroom and to accompany him after the shooting on a trip to Chicago, Texas, and finally Florida, where they were arrested. The lady who operated the poolroom testified that she also witnessed the shooting.

While South Carolina originally followed the common law rule that neither the husband nor wife was competent to testify for or against the other in a criminal case the competency of a husband or wife as a witness is now determined in this State under the following provisions of Section 26-403 of the 1962 Code of Laws:

"In any trial or inquiry in any suit, action or proceeding in any court . . . the husband or wife of any party thereto or of any person in whose behalf any such suit, action or proceeding is brought, prosecuted, opposed or defended shall,

except as hereinafter stated, be competent and compellable to give evidence, the same as any other witness, on behalf of any party to such suit, action or proceeding. *But no husband or wife shall be required to disclose* any confidential or, *in a criminal proceeding, any communication made by one to the other during their marriage."* (Emphasis added.)

This statute makes the husband or wife of any party "competent and compellable to give evidence the same as any other witness," except that "no husband or wife shall be required to disclose any confidential communication or, in a criminal proceeding, any communication made by one to the other during their marriage."

The effect of the quoted statute was to remove the absolute common law disqualification of a husband or wife to testify against the other, and to define the limits of the remaining privilege against being compelled to so testify. See: 2 Wigmore on Evidence, Section 600 *et seq.* and 8 Wigmore, Section 2227 *et seq.* Since this is the effect of the statute, we look solely to its terms to determine the conditions under which a husband or wife may be permitted to testify against the other.

Under our construction of the statute, the inquiry as to whether it was error to permit the wife to testify need proceed no further than a determination of who may exercise the privilege against disclosure, that is, whether the privilege is that of the witness spouse or whether the privilege is that of either spouse who chooses to claim it. The fact that the wife voluntarily testified is not questioned in this case. The privilege was sought to be exercised by the defendant husband. Therefore, if the privilege was personal to the witness spouse, the trial judge properly permitted the wife to testify.

We think the statute makes the exemption against disclosure a privilege of the particular witness, unaffected by any objection of the other spouse. In view of the prior removal of the disqualification of the husband and wife as witnesses against each other and the in-

junction that they may be "compellable" to give evidence as any other witness, the subsequent limitation that "no husband or wife" could be required to disclose marital communications means that the privilege against disclosing such evidence must be claimed or asserted, otherwise the disclosure could be required. There is no statutory language to indicate a legislative intent that a witness spouse could not so testify unless the other spouse agreed. It is the particular witness (husband or wife, as the case may be) who cannot be compelled to disclose; and, in the absence of a contrary statutory direction, the right to exercise the privilege against disclosing marital communications is solely that of the witness spouse from whom the privileged information is being sought.

Error is next assigned in the refusal of the trial judge to permit the introduction of a prior written statement of the wife of defendant and the cross-examination of the witness therefrom.

The wife of defendant admitted in her testimony that she had made two prior statements concerning the crime, one written and a subsequent oral one, both made to the officers. She stated that the written statement was false but that the oral one, consistent with her in-court testimony, was true. It developed that, although she had signed the written statement, she was not given a copy thereof. Since she had not been given a copy of her written statement, the trial judge refused, under Code Sections 1-65, 26-7.1, and 26-7.2, to admit it into evidence and ruled that it could not be used in cross-examination.

These sections make it improper to admit into evidence in any criminal proceeding any written statement taken from a witness by a person employed by the State, county, or municipality, or reference thereto in such proceedings, unless an exact copy of the statement is given to the witness and a signed receipt taken therefor.

The written statement in question was taken by an officer, an employee of the county or State, and a copy thereof was not given to the witness. The trial judge, therefore, properly refused, under the foregoing statutes, to admit the statement in evidence and to permit its use in cross-examination of the witness.

Defendant contends, however, that the State first brought out, in the presence of the jury, the existence of a prior written statement by the witness, which she admitted was false in certain respects; and that, under those circumstances, even if the statement was properly excluded under the statutes, it was highly prejudicial to deny defendant the right to use it to cross examine the witness as to any inconsistencies between it and her trial testimony. Although the statement was excluded, counsel for defendant was permitted, without objection, to ask the witness about certain inconsistencies between her trial testimony and the prior written statement; and she testified that there were no inconsistencies between the two, other than those testified to in answer to counsel's questions.

The prior written statement of the witness is not a part of the appeal record, and there is no showing that the inconsistencies between the trial testimony and the prior statement were not limited to those stated by the witness on cross examination. Since the witness admitted that she had made false and inconsistent statements about the matter and defendant was permitted to examine her concerning these inconsistencies, defendant was not prejudiced by the refusal of the trial court to allow the prior statement to be further used in the trial.

It is also contended that the trial judge committed error in permitting the Solicitor to cross examine the defendant from a written confession of the witness obtained before trial, alleging that the confession was not freely and voluntarily given.

326

The record shows that all requirements were met for an initial determination of the voluntariness of the confession by the court and the subsequent submission of that issue to the jury. The record abundantly sustains the conclusion of the trial judge that the statement of the defendant was freely and voluntarily made. *State v. Patterson,* 263 S. C. 176, 209 S. E. (2d) 39. In fact, the confession was made by defendant against the specific advice of his counsel not to do so.

The action of the trial judge in permitting cross examination of defendant from his voluntarily given confession, for the purpose of impeachment, was entirely proper and defendant's contention to the contrary is without merit.

Finally, defendant argues that it was error for the trial judge to refuse to give a requested instruction relative to the issue of identification of defendant as the perpetrator of the crime. The request was fashioned from the model instruction found in the appendix to the case of *U. S. v. Telfaire,* 152 U. S. App. D. C. 146, 469 F. (2d). 552, and we will not reproduce it here. In general, the court in *Telfaire* was dealing with the "one witness" identification rule, and the model instruction was designed to focus the attention of the jury on the identification issue and minimize the risk of conviction through false or mistaken identification.

There was no error in refusing the requested instruction. The trial, and the instructions given, adequately focused the attention of the jury on the necessity for a finding that the testimony identified defendant as the offender beyond a reasonable doubt; therefore, no prejudice resulted to defendant from the failure to give the requested instruction. Identification in this case, as in *Telfaire,* presented no peculiar problem. Two witnesses positively identified defendant as the one who committed the crime. One was the operator of the poolroom who had ample opportunity to observe; and the other was the wife of defendant, who was driving the car from

which the fatal shots were fired. The failure to give the requested instructions resulted in no prejudice to defendant. *U. S. v. Telfaire, supra.*

The judgment is accordingly affirmed.

Moss, C. J., and LITTLEJOHN and NESS, JJ., concur.

BUSSEY, J., concurs and dissents.

BUSSEY, Justice (concurring and dissenting) :

While in accord with much of the majority opinion of the Court, I find myself in disagreement as to certain points. I seriously question the Court's construction of code sections 1-65, 26-7.1, and 26-7.2. The plain language of section 26-7.2 says that unless the other sections have been complied with no such statement shall be admissible in any case or any reference be made to it in the trial of any case. Nevertheless, assuming that such a statement is otherwise competent and admissible, I cannot conceive of the legislature having intended to deprive an individual of the benefit of such evidence because of the failure of the State to comply with the law. Such would, I think, be completely illogical and outside the obvious purpose of the statutory scheme.

While no constitutional issue has been made or argued in this connection in the instant case, it seems to me that the case of *Chambers v. Mississippi,* 410 U. S. 284, 93 S. Ct. 1038, 35 L. Ed. (2d) 297 (1973), would clearly preclude, on constitutional grounds, the construction of our statute to preclude the use of such a statement by a defendant, assuming such to be otherwise admissible. On this point I disagree only as to the construction of the statute, as I am not convinced that the record reflects, or properly preserves for review here, any resulting prejudice to the defendant from the erroneous ruling below.

Of much greater concern is the Court's construction of code section 26-403. That section as codified since 1952 is a combination of portions of the following acts: 1866 (13) 378, 1870(14) sec. 415. The presently pertinent portion of

the said section, to wit: "But no husband or wife shall be required to disclose . . . in a criminal proceeding any communication made by one to the other during their marriage," had its origin in the 1866 act. That act in pertinent part provided that a defendant in a criminal case should be allowed to testify, if he desired to do so, regarding the facts of the case, but went on to provide "That no person shall be required to answer any question tending to criminate himself; nor shall husband or wife be required to disclose any communication made to each other during their coverture, . . ." It should be remembered that in 1866 husband and wife, in the eyes of the law, still constituted a single entity and under such circumstance allowing one spouse to disclose an incriminating communication without the consent of the other was tantamount to requiring self-incrimination by the nonconsenting spouse.

The case of *Mosely v. Eakin,* 15 Rich. 324, was decided in 1868 just two years after the enactment of the statutory language here involved and apropos of the pertinent statutory language, the court had the following to say: "It was an axiom of the law that no one should be required to give testimony that would criminate himself. By the former of these exceptions the Legislature declare that this protection should be preserved. So, upon well settled principles of public policy, as well as because of the identity of their legal rights and interests, confidential communications between husband and wife belong to the class of privileged communications, and are protected." See, to the same effect, the cases of *State v. Workman,* 15 S. C. 540; *State v. Dodson,* 16 S. C. 453.

The 1870 act dealt in several respects with the competency and compellability of witnesses and contained, *inter alia,* the following provision: "No husband or wife shall be compellable to disclose any confidential communication made by one to the other during their marriage.", this provision being the genesis of a portion of the language contained in present code section 26-403. The 1870 act, section 415, contained a

provision to the effect that nothing contained therein should render one spouse competent or compellable to give evidence for or against the other in any criminal case, with certain exceptions not now pertinent. In the codification of the General Statutes in 1882, section 400 of the Code of Civil Procedure, the provision just mentioned was deleted from former section 415 of the 1870 act.

Following such deletion it was held in *State v. Reynolds,* 48 S. C. 384, 26 S. E. 679 (1897), that a wife was competent to testify against her husband in a criminal case. The court discussed the history and provisions of the 1870 act but made no mention of the 1866 act with which we are here concerned. The report of this case in the South Carolina Reporter indicates that the 1866 act was not even cited to the court. The court nevertheless, in holding the wife competent to testify, was careful to point out that her testimony had no reference to any confidential communication made to her by her husband and she was not compelled to testify. The second syllabus of this case in the Southeastern Reporter construes the holding of the court to be that "a wife may testify against her husband in criminal cases except as to confidential communications made during marriage." The annotators of the code have long cited *State v. Reynolds* for the identical proposition reflected in the syllabus just quoted.

The pertinent provision of the 1866 act, with which we are here immediately concerned was twice stated in the 1882 codification of the General Statutes, in sections 2232 and 2644, and in both instances made applicable only to criminal cases. From then until 1952 when it was jumbled into what is now section 26-403, it was brought forward separately in the successive codes as a part of the criminal statutes. See, for instance, section 64 of the 1893 Revised Statutes, Criminal Code. The marginal title thereto was as follows: "Persons not required to incriminate themselves, etc.: privileges of husband and wife."

The history of the acts, the contemporary construction of the same by the courts, and the construction accorded by the

digesters and code annotators, all lead me to the conclusion that it was the intent of the legislature to preserve the privilege of communications between husband and wife, which privilege was preserved primarily for the benefit of the communicating spouse, but also for either spouse who chose to claim it and not merely for a spouse who perchance chose to be or not to be a witness thereabout.

2 Wigmore on Evidence, section 600 *et seq.* and 8 Wigmore, section 2227 *et seq.,* cited in the opinion of Mr. Justice Lewis, deal with the common law disqualification of husband and wife to testify against each other, exceptions thereto and the statutory modification or abolition of the rule. The status of the law as to privileged communications between husband and wife, with which we are here concerned is dealt with in 8 Wigmore, commencing with section 2332. In section 2333 he discusses the distinction between the privilege against adverse testimony and the privilege for communications between husband and wife and in section 2334 the distinction between the privilege of either spouse against the other's disclosure of communications and the marital disqualification of one spouse to testify on the other's behalf, pointing out that judicial confusion of them was nevertheless quite frequent and the fact that the occasional legislative commingling of them in the same sentence of the same enactment had given rise to much of the confusion.

In section 2340 Professor Wigmore states that "The privilege is intended to secure freedom from apprehension in the mind of the one desiring to communicate (section 2332, *supra*) ; it thus belongs to the *communicating* one."

In McCormick on Evidence, section 83, apropos of who is the holder of the privilege under discussion, we find the following : "Who is the holder? Wigmore's argument, that the policy of encouraging freedom of communication points to the communicating spouse as holder, seems convincing. Under this view, in the case of a unilateral oral message or statement, of a husband to his wife, only the husband could

assert the privilege, where the sole purpose is to show the expressions and attitude of the husband."

In Judge Whaley's Handbook on South Carolina Evidence, S.C.L.Q., Volume 9, No. 4A (1957) page 31, the author refers to communications between husband and wife being an old common law privilege and hence still existing in South Carolina. He further stated that while we had no cases involving who was the holder of the privilege, one had no doubt that the courts would follow the great majority in holding that any waiver of the privilege "must be by both spouses since it is the privilege of both." Professor Dreher in his Guide to Evidence Law in South Carolina, page 26, construes code section 26-403 as preserving the common law privilege against the disclosure of confidential communications made by one spouse to the other during their marriage. He goes on to state that "The party who made the statement owns the privilege unless there is a purpose to show agreement by silence, in which case the other spouse owns it. If there was a general agreement between them on some matter both spouses own the privilege as to that."

In the instant case we are not at all concerned with whether or not the wife, who was allowed to testify against her husband could, or could not, have claimed the privilege. It is sufficient to point out, for the purpose of this case, that both Wigmore and McCormick, as well as the only two distinguished South Carolinians who have written texts on the subject, all agree that the husband here was the holder of the common law privilege preserved by the code section. The conclusion which they reach, as far as I am able to ascertain is supported by virtually the entire weight of case law throughout the United States. Research has not disclosed to the writer any case, under a statute at all similar to ours, holding that the privilege is that of only the witness spouse and that the communicating spouse is not the holder thereof. In the fairly recent North Carolina case of *Hicks v. Hicks,* 271 N. C. 204, 155 S. E. (2d) 799 (1967), the court

construed its statute, which is substantially in accord with ours, to hold that the communicating spouse was the holder of the privilege. A New York statute appears to be quite similar to our statute and it is there held that the communicating spouse is the holder of the privilege. *People v. Wood,* 126 N. Y. 249, 27 N. E. 362; *People v. Melski,* 10 N. Y. (2d) 78, 217 N. Y. S. (2d) 65, 176 N. E. (2d) 81 (1961). See also *Martin v. Mississippi,* 203 Miss. 187, 33 So. (2d) 825, 2 A. L. R. (2d) 640; *Dalton v. People,* 68 Colo. 44, 189 P. 37; *Hunter v. Hunter,* 169 Pa. Super. 498, 83 A. (2d) 401. Under what I deem to be the proper construction of our statute and the clear weight of authority, it is my view that the husband was the holder of the privilege and that the lower court erred in admitting, over the objection of the defendant, communications by the husband to his wife.

The judgment below should be reversed and the case remanded for a new trial.