543 S.E.2d 541

**The STATE, Respondent,**

v.

**Nakia JONES, Appellant.**

No. 25257.

Supreme Court of South Carolina.

Heard Jan. 11, 2001.

Decided March 12, 2001.

50

Senior Assistant Appellate Defender Wanda H. Haile, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, and Assistant Attorney General Melody J. Brown, all of Columbia, and Solicitor Warren B. Giese, of Columbia, for respondent.

WALLER, Justice:

Jones was convicted of three counts of armed robbery, and possession of a firearm during the commission of a violent crime; he was sentenced to life imprisonment without parole pursuant to S.C.Code Ann. § 17–25–45 (Supp.2000), commonly known as the "Two–Strikes" law.[1] We affirm.

---

1. Under section 17–25–45(A)(1), upon conviction for a most serious offense, a person must be sentenced to a term of imprisonment for life

## FACTS

At 3:30 AM on the morning of June 29, 1997, the three victims in this case, Dwayne Wright, Theodore Wheeler and Ricardo Wheeler, were robbed at gunpoint by an unknown assailant.

In late July 1997, approximately three and one-half weeks after the robbery, police showed each victim, independently, a photographic line-up of six individuals; all three victims identified Jones as the person who robbed them. Jones was arrested and charged with three counts of armed robbery, possession of a firearm during commission of a violent crime, and failure to stop for a blue light. He was convicted of the armed robbery and possession of a firearm counts; he was found not guilty of failing to stop for a blue light. He was sentenced to life imprisonment without parole under S.C.Code Ann. § 17–25–45 (Supp.2000), the Two–Strikes law, due to his prior conviction of a "most serious" offense.[2]

## ISSUES

1. Was Jones properly tried for three counts of armed robbery?

2. Is a sentence of life imprisonment without parole after commission of one "most serious" offense constitutionally permissible?

3. Did the court err in refusing a *Telfaire*[3] charge?

### 1. THREE COUNTS OF ARMED ROBBERY

Jones was separately indicted for the armed robbery of each victim. He contends, citing *State v. Waller*, 280 S.C. 300, 312 S.E.2d 552 (1984), the three counts should have been "rolled

---

without the possibility of parole if that person has one or more prior convictions for a most serious offense. Armed robbery is a most serious offense. S.C.Code Ann. § 17–25–45(C)(1).

**2.** Jones' 1996 conviction for assault and battery with intent to kill is a "most serious" crime under the statute. His 1993 convictions for assault and battery of a high and aggravated nature and aiding an escape were not used for enhancement.

**3.** *United States v. Telfaire,* 469 F.2d 552 (D.C.Cir.1972).

into a single count" as the goods were taken from three victims simultaneously. *Waller* does not control the present case.

In *Waller*, the defendant broke into an apartment occupied by three roommates and stole property belonging to each. The solicitor decided to aggregate the value of the items taken and charge Waller with grand larceny. On appeal, Waller contended the value of property taken from more than one owner could not be aggregated so as to sustain a conviction for grand larceny. This Court affirmed Waller's conviction under prior case law which suggested a prosecutor could elect to prosecute for one larceny or several larcenies. However, the *Waller* Court decided to follow the majority of cases which hold the larceny of property from different owners at the same time and place constitutes one larceny. The Court held, "henceforth, the larceny of property from different owners at the same time and at the same place shall be prosecuted only as a single larceny." 280 S.C. at 301, 312 S.E.2d at 553.[4]

*Waller* is inapplicable here.

██ The rationale for the single larceny rule is that "the act of taking is one continuous act or transaction, and since the **gist of the offense is the felonious taking of property**, the legal quality of the act is not affected by the fact that the property stolen belonged to different persons." D.H. White, *Single or Separate Larceny Predicated Upon Stealing Property From Different Owners at the Same Time*, 37 A.L.R.3d 1407, 1410 § 2 (1971) (emphasis supplied). Larceny is the misdemeanor offense of taking or carrying away of goods valued at less than $1000.[5]

██ The fundamental distinction between larceny and armed robbery, in our view, lies in the fact that armed

---

4. The State asserts the rationale for the holding in *Waller* was that the property the defendant took from any one roommate was insufficient to support a charge of grand larceny. Contrary to the State's contention, a footnote in *Waller* indicates there was sufficient evidence to permit the jury to find the value of the property taken from one of the roommates exceeded $200.00. 280 S.C. at 301, 312 S.E.2d at 553, n. 1.

5. S.C.Code Ann. § 16–13–30(A) (Supp.2000). Grand larceny is the felonious offense of taking and carrying away of goods valued at $1000 or more. S.C.Code Ann. § 16–13–30(B) (Supp.2000).

robbery is a crime of violence. *See* S.C.Code Ann. § 16–1–60 (Supp.2000). Although armed robbery is contained in Chapter 11 to Title 16 (Offenses Against Property), the fact that it is a crime of violence makes it more of an offense against the person, thereby warranting its treatment as a separate offense as to each person who was threatened with bodily harm by a deadly weapon. *See State v. Mahaley,* 122 N.C.App. 490, 470 S.E.2d 549, 551 (1996), *citing* 77 CJS *Robbery* § 2 (1994) (while robbery can be classified as an offense against both person and property, it is primarily an offense against the person); *State v. Harris,* 8 N.C.App. 653, 175 S.E.2d 334, 336 (1970) (gist of armed robbery is not the taking of personal property, but a taking or attempted taking by force or putting in fear by the use of firearms or other dangerous weapon); *People v. Jones,* 217 Ill.App.3d 175, 160 Ill.Dec. 184, 576 N.E.2d 1138 (1991), *rev'd on other grounds* 149 Ill.2d 288, 172 Ill.Dec. 401, 595 N.E.2d 1071 (1992) (notwithstanding armed robbery is captioned as a "Crime Against Property," it is a forcible felony carried out against a person).

A case directly on point is *State v. Gratz,* 254 Or. 474, 461 P.2d 829 (1969), in which the Oregon Supreme Court addressed a contention identical to Jones':

The defendant relies upon *State v. Clark,* 46 Or. 140, 80 P. 101, wherein this court held that the stealing of several articles belonging to more than one person at the same time and place by one act constitutes but a single offense. This holding is in accord with the weight of authority and is based on the reasoning that, since there was but one overt act (the theft), a rule to the contrary would lead to incongruous and inhumane results. Anno. 28 A.L.R.2d [1182] 1187, s 3.

However, in the cases dealing with armed robbery, where the gravamen of the offense is an assault upon and a theft from the person, ORS 163.280, the courts hold that each assault and theft from a different person, although occurring at the same time and place, is a separate crime. . . .

With few exceptions, not here pertinent, in crimes against the person when contrasted with crimes against property there are as many offenses as individuals affected. And, while it may be said that in armed robbery a single act may put several persons in fear, yet, in order to consummate the

crime, that act must be followed by the act of taking from each person money or personal goods.

461 P.2d at 830 (internal citations omitted). *See also Commonwealth v. Levia,* 385 Mass. 345, 431 N.E.2d 928 (1982) (although successive larcenies from multiple victims must be charged and punished as a single larceny if part of a single larcenous scheme, where crimes of violence are committed against several victims, multiple charges and punishments are appropriate); *Sullivan v. Commonwealth,* 16 Va.App. 844, 433 S.E.2d 508 (1993) (essential character of common-law robbery is violence against a person for purpose of theft such that appropriate unit of prosecution is determined by number of persons from whose possession property is taken by force or intimidation); *Camacho v. State,* 825 S.W.2d 168 (Tex.App. 1992) (what separates robbery from theft is the human element).

█ In accordance with the above-cited cases, we hold that, where there is a threat of bodily injury to each person from whom property is stolen,[6] the defendant may be charged with separate offenses. *See* Joseph T. Bockrath, *Prosecution for Robbery of One Person As a Bar to Subsequent Prosecution for Robbery of Another Person Committed at the Same Time,* 51 A.L.R.3d 693, § 2 (1973) (noting that ordinarily, where several persons are robbed at the same time, the offender may be indicted and convicted for the robbery of each person as a distinct offense). Accordingly, Jones was properly charged with three separate counts of armed robbery.

## 2. CONSTITUTIONALITY OF TWO–STRIKES LAW

Jones contends S.C.Code Ann. § 17–25–45 (Supp.2000), the "Two–Strikes" law under which he was sentenced, is unconstitutional. He asserts sentencing under the statute 1) violates

---

**6.** In the present case, there is evidence that the victims were separately threatened. Ricardo Wheeler and Theo Wheeler each testified that Jones had specifically held the gun to their head and or side, and Theo testified Jones threatened to shoot him if he didn't have any more money. Although there is no indication Jones specifically pointed the gun at Dwayne Wright's head or side, Wright testified Jones made him throw his shoes to the ground, and fired the gun one time when Wright and the Wheeler brothers were moving too slowly to suit him.

separation of powers,[7] 2) constitutes cruel and unusual punishment,[8] 3) results in an equal protection violation,[9] 4) shifts the burden to the defendant to prove the constitutionality of the statute, and 5) constitutes an *ex post facto* violation.[10] We disagree.

■ Initially, this Court held in *State v. Burdette*, 335 S.C. 34, 515 S.E.2d 525 (1999), that Section 17–25–45 does not violate the separation of powers doctrine. We stated, "[u]nder the mandatory sentencing guidelines, the prosecutor can still choose not to pursue the triggering offenses or to plea the charges down to non-triggering offenses. Choosing which crime to charge a defendant with is the essence of prosecutorial discretion, not choosing which sentence the court shall impose upon conviction." 335 S.C. at 40–41, 515 S.E.2d at 528–529. Further, we found the matter of sentencing if convicted of a triggering offense to be a matter within the province of the legislature. *Id.* Accordingly, under *Burdette*, Jones' sentences pose no separation of powers problem.

■ Jones next asserts his life sentence constitutes cruel and unusual punishment. We disagree.

■ The cruel and unusual punishment clause requires the duration of a sentence not be grossly out of proportion with the severity of the crime. *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Pursuant to *Solem*, this Court reviews three factors in assessing proportionality: (1) the gravity of the offense compared to the harshness of the penalty; (2) sentences imposed on other criminals in the same jurisdiction; and (3) sentences for the same crime in other jurisdictions. *State v. Kiser*, 288 S.C. 441, 343 S.E.2d 292 (1986).[11]

---

7. U.S. Const. art. I, II, III; S.C. Const. art. 1, § 8.

8. U.S. Const. amend VIII; S.C. Const. art. 1 § 15.

9. U.S. Const. amend. XIV; S.C. Const. art. 1, § 3.

10. U.S. Const. art. 1, § 10; S.C. Const. art. 1, § 4.

11. It is questionable, in light of the United States Supreme Court's opinion in *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), whether the stringent three-factor *Solem* inquiry

Initially, we agree with the Court of Appeals that given the "most serious" nature of armed robbery, when coupled with a prior most serious offense, the gravity of the offense is not disproportionate to a sentence of life without parole. *See also U.S. v. D'Anjou,* 16 F.3d 604, 613–14 (4th Cir.1994) (life imprisonment without parole for drug conspiracy, possession, and distribution offenses not cruel and unusual); *Smallwood v. Johnson,* 73 F.3d 1343, 1346–47 (5th Cir.1996) (50 year sentence for misdemeanor theft, made felony by recidivist statute, not grossly disproportionate); *U.S. v. Hill,* 30 F.3d 48, 50–51 (6th Cir.1994) (mandatory life imprisonment without parole upon third felony drug conviction not grossly disproportionate); *Simmons v. Iowa,* 28 F.3d 1478, 1482–83 (8th Cir. 1994) (mandatory life imprisonment without parole for aiding and abetting restraint and torture of child not grossly disproportionate).

Further, we find Jones' sentence proportionate to the sentences imposed on other criminals in this state. Jones' sentence of life without possibility of parole for his second conviction of a "most serious" offense is the same as that imposed on any other criminal with a second conviction of a "most serious" offense, such that it is not disproportionate to the sentences imposed on other South Carolinians.

Finally, as to sentencing in other jurisdictions for the same crime, life sentences for armed robbery under recidivist laws are not unique to South Carolina. *See United States v. Carroll,* 207 F.3d 465 (8th Cir.2000) (defendant's sentence of life imprisonment for role in credit union robbery under three-strikes law not cruel and unusual); *Young v. State,* 245 Ga.App. 684, 538 S.E.2d 760 (2000) (imposing life without parole for armed robbery under recidivist statute, O.C.G.A. § 17–10–7); *State v. Oliver,* 162 N.J. 580, 745 A.2d 1165 (2000) (life without parole for armed robbery under three-strikes law not cruel and unusual); *People v. Ayon,* 46 Cal.App.4th 385, 53 Cal.Rptr.2d 853 (1996) (life sentence without parole for armed

---

remains mandated in "cruel and unusual punishment" cases. *See State v. Brannon,* 341 S.C. 271, 533 S.E.2d 345 (Ct.App.2000) (finding the 3–prong inquiry of *Solem* no longer applicable and requiring only a threshold comparison of the gravity of the offenses against the severity of the sentence). However, we need not decide the matter here since, in our view, even the more stringent test of *Solem* is met in this case.

robberies, with prior felony convictions, not cruel and unusual); *United States v. Farmer*, 73 F.3d 836 (8th Cir.1996) (life without parole for armed robbery coupled with three prior violent felonies not cruel and unusual). *See also Ortiz v. State*, 266 Ga. 752, 470 S.E.2d 874, 876 (1996) (upholding Two-Strikes law imposing life without parole upon conviction of a second "most serious" offense against eighth amendment challenge). In sum, we find Jones' sentence withstands Eighth Amendment scrutiny.

■ As to Jones' equal protection claim, his sole allegation is that "minorities are affected most" by section 17–25–45. There is absolutely nothing in the record supporting this assertion.

■ When the issue is the constitutionality of a statute, every presumption will be made in favor of its validity and no statute will be declared unconstitutional unless its invalidity appears so clearly as to leave no doubt that it conflicts with the constitution. *State v. Bouye*, 325 S.C. 260, 484 S.E.2d 461 (1997). Appellants have the burden of proving the statute unconstitutional. *Id.* Here, given that Jones has offered no evidence in support of his claim, he has utterly failed in his burden. *Accord, State v. Oliver*, 745 A.2d at 1170 (defendant failed to demonstrate equal protection violation in three strikes law as there was no showing it had a disparate impact on minorities).[12]

Next, Jones claims his sentence "in effect shifted the burden to [him] to prove the unconstitutionality of the statute." We find Jones' argument is so conclusory that it has been abandoned. *See Solomon v. City Realty Co.*, 262 S.C. 198, 203 S.E.2d 435 (1974) (where only passage in brief relating to issue appealed was single conclusory statement which left unargued the error assigned by exception, issue was abandoned); *Muir v. C.R. Bard, Inc.*, 336 S.C. 266, 519 S.E.2d 583 (Ct.App.1999) (issue is deemed abandoned on appeal if it is

12. Moreover, we find no cases holding recidivist statutes or similar laws violate equal protection. *See e.g. Grant v. State*, 770 So.2d 655 (Fla.2000) (Florida's recidivist statute held not to violate equal protection); *State v. Thorne*, 129 Wash.2d 736, 921 P.2d 514 (1996) (Washington's Persistent Offender Accountability Act passes the rational basis test and does not violate equal protection).

argued in a short, conclusory statement without supporting authority). Accordingly, we decline to address the merits of this issue.

 Finally, Jones asserts sentencing under section 17–25–45 violates the *ex post facto* law because "it changed the punishment for a crime in a manner that said punishment did not exist previously." We disagree.

 Where conduct in committing offenses which trigger recidivist features of sentencing provisions occur after the sentencing provision's effective date, there is no *ex post facto* violation. *State v. Dabney*, 301 S.C. 271, 391 S.E.2d 563 (1990) (amendment of statute lengthening period of time previous convictions could be used to increase punishment for subsequent DUI offense did not violate *ex post facto* clause as applied to drivers who committed offenses for which they were being sentenced after effective date of statute's amendment).

Here, Jones' armed robberies occurred subsequent to passage of section 17–25–45 and, as such, there is no *ex post facto* violation. *Accord Phillips v. State*, 331 S.C. 482, 504 S.E.2d 111 (1998) (no *ex post facto* violation for legislature to enhance punishment for later offense based on prior conviction, even though enhancement provision was not in effect at time of prior offense).

To the extent Jones contends the Two–Strikes law changes the consequences of his 1996 plea to ABIK, he is incorrect. *See Gryger v. Burke*, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948) (holding that sentencing as an habitual criminal is not viewed as a new jeopardy or additional penalty for an earlier crime; rather it is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because it is a repetitive one). *Accord State v. Oliver, supra.*

In sum, we find no constitutional violation in application of the Two–Strikes law to Jones.

### 3. *TELFAIRE* CHARGE

 Finally, Jones asserts the trial court erred in refusing his requested charge on identification pursuant to *United States v. Telfaire*, 469 F.2d 552 (D.C.Cir.1972). We disagree.

In *State v. Motes*, 264 S.C. 317, 215 S.E.2d 190 (1975), this Court recognized that the court in *Telfaire* was dealing with

the **"one witness"** identification rule, and the model instruction there was designed to focus the attention of the jury on the identification issue and minimize the risk of conviction through false or mistaken identification. *See also State v. Simmons*, 308 S.C. 80, 417 S.E.2d 92 (1992) (in single witness identification cases, court should instruct jury burden of proving identity of defendant rests with the state). The present case does not involve a single witness identification and, given the witnesses' degree of certainty, there appears very little likelihood of mistaken identification. We find a *Telfaire* charge was unnecessary.

Jones' remaining issue is affirmed pursuant to Rule 220(b)(1), SCACR and the following authorities: *State v. Stewart*, 275 S.C. 447, 272 S.E.2d 628 (1980); *State v. Gambrell*, 274 S.C. 587, 266 S.E.2d 78 (1980) (photographic and physical identifications reliable under totality of circumstances).

Jones' convictions and sentence are

**AFFIRMED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.