**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RICHARD CHARLES JOHNSON,
Petitioner-Appellant,

v.

MICHAEL MOORE, Director of the

South Carolina Department of
Corrections; CHARLES M. CONDON,
Attorney General of the State of
South Carolina,
Respondents-Appellees.

No. 97-33

RICHARD CHARLES JOHNSON,
Petitioner-Appellant,

v.

MICHAEL MOORE, Director of the

South Carolina Department of
Corrections; CHARLES M. CONDON,
Attorney General of the State of
South Carolina,
Respondents-Appellees.

No. 97-7801

Appeals from the United States District Court
for the District of South Carolina, at Charleston.
Henry M. Herlong, Jr., District Judge.
(CA-96-3814-2-20AJ, CA-97-1500-2-20AJ)

Argued: May 6, 1998

Decided: September 24, 1998

Before ERVIN, WILKINS, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Wilkins wrote the majority opinion, in which Judge Williams joined. Judge Ervin wrote a concurring and dissenting opinion.

_____

**COUNSEL**

**ARGUED:** John Henry Blume, III, CORNELL LAW SCHOOL, Ithaca, New York, for Appellant. William Edgar Salter, III, Senior Assistant Attorney General, Columbia, South Carolina, for Appellees. **ON BRIEF:** David P. Voisin, Columbia, South Carolina, for Appellant. Charles M. Condon, Attorney General, John W. McIntosh, Deputy Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, Columbia, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

WILKINS, Circuit Judge:

Richard Charles Johnson filed these petitions for habeas corpus relief[1] from his South Carolina murder convictions and sentences. See 28 U.S.C.A. § 2254 (West 1994 & Supp. 1998). [2] The district court

_____

[1] Johnson named Michael Moore, Director of the South Carolina Department of Corrections, and Charles M. Condon, Attorney General of South Carolina, as Respondents in his petitions. For ease of reference, we refer to Respondents collectively as "the State" throughout this opinion.

[2] Because Johnson's petitions for writs of habeas corpus were filed after the April 24, 1996 enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub. L. No. 104-132, 110 Stat. 1214, the amendments to 28 U.S.C.A. § 2254 effected by § 104 of the AEDPA govern the resolution of this appeal. See Green v. French, 143 F.3d 865, 868 (4th Cir. 1998); see also Lindh v. Murphy, 117 S. Ct. 2059,

2

denied the relief sought, holding that the majority of Johnson's claims were procedurally defaulted and that the state court rulings that the remainder of Johnson's allegations of error lacked merit were not unreasonable. Johnson's request for a certificate of appealability is granted because at least one judge on the panel concluded that Johnson "has made a substantial showing of the denial of a constitutional right." 4th Cir. R. 22(a). However, for the reasons set forth below, we affirm the decision of the district court denying Johnson's petition.

I.

In September 1985, C. Daniel Swansen was traveling south through the Carolinas toward Florida. While in North Carolina, Swansen met Johnson and permitted Johnson to accompany him on the journey in Swansen's recreational vehicle (RV). The following day, Swansen and Johnson met Curtis Harbert and Connie Hess at a rest area on Interstate 95. Harbert and Hess joined Swansen and Johnson, and the group continued south together in Swansen's RV. During the evening, Johnson fatally shot Swansen, wrapped his body in a sheet, tied it with stereo wire, and concealed it under a mattress in the rear portion of the RV. After the murder, Johnson, Harbert, and Hess continued their journey in the RV with Johnson driving. Johnson, who had been drinking, was driving erratically, and a motorist who observed Johnson's reckless operation of the RV notified South Carolina Trooper Bruce K. Smalls. The officer stopped the RV, and during questioning, Trooper Smalls was shot six times and killed.

Johnson was charged in Jasper County, South Carolina with the murder of Trooper Smalls; he was tried and convicted of this capital

_____

2067-68 (1997) (holding that habeas petitions filed prior to the effective date of the act are not governed by the Chapter 153 AEDPA amendments). Although Johnson's state PCR proceedings were decided by the South Carolina Supreme Court after June 18, 1996--the date that South Carolina purports to have satisfied the opt-in provisions--the State is not arguing that the provisions of § 107 (including the more stringent procedural default provisions) of the AEDPA apply. See Howard v. Moore, 131 F.3d 399, 403 n.1 (4th Cir. 1997) (en banc), petition for cert. filed, ___ U.S.L.W. ___ (U.S. May 22, 1998) (No. 97-9263).

murder in February 1986 and was sentenced to death. However, Johnson's conviction and sentence in the Jasper County proceeding were reversed on appeal. See State v. Johnson, 360 S.E.2d 317 (S.C. 1987). Johnson was retried in Jasper County in March 1988. A jury again found him guilty of the murder of Trooper Smalls and sentenced Johnson to death. This conviction and sentence were affirmed on direct appeal, and the Supreme Court denied certiorari on April 20, 1992. See State v. Johnson, 410 S.E.2d 547, 550 (1991), cert. denied, 503 U.S. 993 (1992).

In the meantime, in March 1986, Johnson pled guilty to the murder of Swansen and to armed robbery in Clarendon County, South Carolina; he received a sentence of life imprisonment plus 25 years as a result of the Clarendon County convictions. He did not appeal these convictions or sentence to the South Carolina Supreme Court.

Subsequently, Johnson filed separate petitions for postconviction relief (PCR) in state court challenging the Clarendon and Jasper County convictions. These petitions were consolidated for disposition, and an evidentiary hearing was conducted by the state PCR court. Thereafter, the state PCR court denied relief on March 13, 1995, and the South Carolina Supreme Court denied certiorari on July 11, 1996.

On December 2, 1996, Johnson filed a § 2254 petition seeking federal habeas corpus review, attempting to obtain relief from both the Jasper and Clarendon County convictions and sentences. The district court concluded that this combined petition was improper and on May 9, 1997 ordered that the portion of Johnson's petition relating to the Clarendon County convictions be dismissed without prejudice. On May 15, 1997, Johnson filed a second habeas corpus petition attacking the Clarendon County convictions along with a motion to consolidate the two petitions. The district court denied the motion to consolidate, and the petitions were adjudicated separately.

The district court first concluded that the standards of review adopted in the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996 applied because Johnson's petitions were filed after the effective date of the AEDPA. The district court then found that the majority of Johnson's claims were procedurally defaulted

4

and, applying the AEDPA standards of review, determined that the decisions of the state courts on the remaining issues were not unreasonable. Thus, the district court entered orders denying relief on both petitions, and Johnson now appeals those denials. The appeals were consolidated by this court.

Johnson raises a number of issues on appeal. With respect to the Jasper County conviction for the murder of Trooper Smalls, Johnson argues that (1) the State violated his right to due process under Brady v. Maryland, 373 U.S. 83 (1963), by failing to inform him prior to his 1988 retrial in Jasper County that Hess, who had testified in the first trial that Johnson had killed Swansen and Trooper Smalls, had recanted a portion of her testimony and had instead indicated that Harbert was the murderer; (2) the State failed to disclose immunity agreements with Harbert and Hess and to correct the false impression created by Harbert's testimony that no such agreement existed; (3) the State failed to reveal, or correct a false impression with respect to, the full extent of Ronnie Dale Stevenson's prior record, involvement as an informant with law enforcement, and unreliability; (4) Stevenson acted as a State agent such that Johnson's Sixth Amendment rights were violated when Stevenson questioned Johnson with respect to the murder of Trooper Smalls; (5) the cumulative failure of the State to disclose the exculpatory material deprived Johnson of a fair trial in violation of the Sixth, Eighth, and Fourteenth Amendments; (6) Johnson was denied effective assistance of counsel at the guilt phase of his trial; (7) the failure of the trial court to inquire into a possible conflict of interest arising from defense counsel's prior representation of Stevenson violated Johnson's Sixth, Eighth, and Fourteenth Amendment rights; (8) all of Johnson's claims arising out of the guilt phase of the Jasper County proceedings are not barred as a result of his admission of guilt at sentencing; (9) Johnson was denied effective assistance of counsel in the sentencing phase of the Jasper County proceedings; and (10) the State improperly relied on the "unconstitutionally" obtained Clarendon County convictions in sentencing Johnson in Jasper County. With respect to the Clarendon County convictions and sentence, Johnson asserts that his guilty plea was involuntary because (1) counsel failed to inform him that a statement he had given to law enforcement officers concerning the events in Clarendon County was inadmissible on the basis that it was obtained unconstitutionally and (2) the State failed to disclose records in its possession indicating that

5

Swansen was mentally ill, unstable, and prone to acts of violence. We first address those claims that the district court found to be procedurally defaulted and then proceed to consider those that are properly before us on the merits.

II.

Johnson maintains that the district court erred in concluding that all of his claims relating to constitutional error in the guilt phase of his Jasper County trial--those claims identified above as claims (1) through (7)--were procedurally defaulted. Absent cause and prejudice or a miscarriage of justice, a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule. See Harris v. Reed, 489 U.S. 255, 262 (1989). Such a rule is adequate if it is regularly or consistently applied by the state court, see Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and is independent if it does not "depend[ ] on a federal constitutional ruling," Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

At the penalty phase of his trial, Johnson had an opportunity to make a statement to the jury. He said:

> I haven't been before you during the guilt phase of this trial or until now because there was no defense for my actions, I realize that now.... I have no defense for anything or the tragedies that have occurred. All I have is a sorrow[for] the lives that I have ruined. I realize that there were many that I have ruined.

J.A. 1109. The state PCR court considered these statements to be an admission of guilt. See J.A. 2850; see also Johnson, 410 S.E.2d at 557 (referring to this testimony as "the admission of guilt Johnson made"). And, because Johnson admitted guilt, the state PCR court concluded that as a matter of South Carolina law, all issues Johnson raised pertaining to the guilt phase of the trial were procedurally defaulted. See J.A. 2850-51 (citing Whetsell v. State, 277 S.E.2d 891 (S.C. 1981), and State v. Sroka, 230 S.E.2d 816 (S.C. 1976)).

6

A.

Johnson maintains that the determination of the state PCR court[3] that his Jasper County guilt-phase arguments are procedurally defaulted as a result of his sentencing statement does not constitute an "adequate" state-law ground for decision. [4] A state rule is "adequate" if it is "consistently or regularly applied." Johnson, 486 U.S. at 587. Consistent or regular application of a state rule of procedural default does not require that the state court show an "undeviating adherence to such rule admitting of no exception." Wise v. Williams, 982 F.2d 142, 143 (4th Cir. 1992) (internal quotation marks omitted). Rather, "despite some deviations, a general rule, that ha[s] been applied in the vast majority of cases" must be considered to be consistently applied. Plath v. Moore, 130 F.3d 595, 602 (4th Cir. 1997) (internal quotation marks omitted), cert. denied , 118 S. Ct. 1854 (1998). In assessing whether a state has consistently applied a procedural rule, we consider only those instances in which the state advanced the procedural rule as a basis for a decision adverse to the petitioner because we cannot say that a state court inconsistently applied a procedural rule that was not presented for its consideration. See Meadows v. Legursky, 904 F.2d 903, 907 (4th Cir. 1990) (en banc). Furthermore, we necessarily look only to the period prior to the time the defendant violated the state procedural rule; decisions applying a state rule after that time are irrelevant in determining whether

_____

3 Because the South Carolina Supreme Court denied certiorari, we look to the decision of the state PCR court in determining whether Johnson defaulted his claims. See Ylst v. Nunnemaker , 501 U.S. 797, 805-06 (1991) (holding that an unexplained appellate state-court decision is presumed to be based on the last reasoned decision).

4 Johnson also contends that the state decisions relied upon by the state PCR court, when properly viewed, indicate that as a matter of South Carolina law his statement admitting guilt is relevant to a determination of whether any error committed during the guilt phase of his trial was harmless, not whether he waived review of the issues related to his guilt. However, a federal habeas court does not review issues of state law. See Barnes v. Thompson, 58 F.3d 971, 974 n.2 (4th Cir. 1995). Rather, after determining that a state court relied on an adequate and independent state-law ground for decision, we "may only inquire into whether cause and prejudice exist to excuse [a state procedural] default, not into whether the state court properly applied its own law." Id.

7

the rule was consistently applied at the critical time. See id. at 907 & n.3.

Johnson maintains that under South Carolina law an admission of guilt by the defendant is employed to evaluate whether an error committed by the trial court is harmless rather than to waive trial errors. As such, Johnson contends, the rule on which the state habeas court relied to determine that his claims were procedurally defaulted is not, and cannot be, a rule of procedure that is consistently applied.

A close examination of the decisions to which he points in support of his argument demonstrates that Johnson has failed to recognize that under South Carolina law, it is appropriate to rely upon a defendant's admission of guilt in applying a harmless error analysis to a trial error, and it also is proper to hold that a defendant's admission of guilt waives consideration of trial errors. In order to understand the different contexts in which the South Carolina courts have relied upon a defendant's admission of guilt, a careful examination of its opinions is necessary.

The first two cases to which Johnson directs our attention do not demonstrate that South Carolina courts have inconsistently applied the rule that a defendant's admission of guilt waives consideration of all trial issues for the simple reason that the rule had not yet been enunciated when the cases were decided. The earliest relevant decision of the South Carolina courts is State v. Patterson, 209 S.E.2d 39 (S.C. 1974). In Patterson, when testifying in the trial of a co-participant, the defendant admitted his guilt to the murder of which he previously had been convicted. Considering on direct appeal Patterson's argument that he was entitled to a new trial because the trial court erred in refusing to instruct the jury on involuntary manslaughter, the South Carolina Supreme Court ruled that "[i]f there was error in the court's refusal to submit involuntary manslaughter, which we do not concede, appellant has waived the error by his subsequent explicit testimony." Id. at 41. The court went on to explain:

> If it be said that the conflict between the original statement and appellant's subsequent testimony should be resolved by a jury, the ready answer is that on retrial no honest and rational jury could fail to convict the appellant of murder.

8

> For this reason, we decline to consider whether the court
> erred in refusing to submit the issue of involuntary man-
> slaughter to the jury. For like reason, we decline to consider
> the other grounds of appeal which, if sustained, could only
> result in the futility of another trial of a defendant who is
> inextricably tied to the death weapon, and who, since his
> conviction of murder, has freely and voluntarily declared his
> guilt in a most solemn fashion.

Id. The court cited no authority in support of its decision that Patterson's admission of guilt rendered consideration of the remaining issues raised unnecessary. The court, however, did address as a preliminary matter an issue presented by Patterson challenging a ruling by the trial court that a pretrial confession he made to the murder was voluntary. Apparently, the court differentiated the suppression issue from those issues that it refused to consider due to Patterson's post-trial admission of guilt on the basis that if Patterson were to prevail on the suppression issue, a retrial would not necessarily result in a determination of guilt.

From the discussion by the court set forth above, it is impossible to accurately characterize the rule applied as either a true waiver or harmless error rule. On the one hand, the court indicates that it was a rule of waiver, but the court did not hold all of the issues subject to a waiver to be waived. On the other hand, the court does not engage in a harmless error analysis--a determination of the effect of claimed errors on the verdict entered by the jury. Instead, the court appears to have focused on the impact that the admission of guilt would have in a subsequent trial. Accordingly, we cannot say that Patterson set forth the procedural default rule on which the PCR court relied in this case.

The South Carolina Supreme Court next considered the effect of an admission of guilt in State v. Sroka, 230 S.E.2d 816 (S.C. 1976). In Sroka, the court considered the appeal of a defendant convicted of armed robbery, writing:

> We affirm because the guilt of the appellant is conclu-
> sively shown by the record and any alleged error could not
> have been prejudicial. Any doubt about the correctness of

9

> this conclusion is eliminated by the admission of appellant
> in open court, after conviction and during the pre-sentence
> inquiry by the trial judge, that he had participated in the rob-
> bery with a sawed-off shotgun. Further review of the record,
> therefore, is rendered unnecessary. State v. Key , 256 S.C.
> 90, 180 S.E.2d 888[ (1971)]; State v. Miller, 266 S.C. 409,
> 223 S.E.2d 774[ (1976)].

Id. at 817. From the citations to Key  and Miller--both of which hold errors to be harmless because the record conclusively demonstrated the guilt of the defendant--the court plainly was relying on a determination that the allegations of error raised by the defendant were harmless. The court further supported its determination that the defendant could not have been prejudiced by any error with the fact that the defendant had admitted his guilt during a presentencing proceeding following his conviction. Thus, rather than applying the procedural default rule on which the PCR court relied in this case, the court in Sroka applied a traditional harmless error analysis, which it supported with an observation that the defendant had admitted his guilt. Just as Patterson failed to establish a rule of waiver of trial errors based on an admission of guilt by the defendant, so too did Sroka fail to establish any such rule.

The next decision addressing the effect of a defendant's admission of guilt is Whetsell v. State, 277 S.E.2d 891 (S.C. 1981). In Whetsell, two defendants challenged convictions entered against them following their guilty pleas on the ground that their attorney was ineffective for failing to move to suppress evidence and their confessions. The court rejected their arguments, ruling:

> The general rule is that guilty pleas, freely and voluntarily
> entered, act as a waiver of all non-jurisdictional defects and
> defenses, including the claims of a violation of a constitu-
> tional right prior to the plea. This rule applies to the claim
> that counsel was ineffective.
>
> Furthermore, review of a trial error is unnecessary where
> a defendant admits in open court after his conviction that he
> is guilty.

10

Id. at 892 (citations omitted) (emphasis added).**5** This ruling is the first time that the South Carolina Supreme Court announced clearly that an admission of guilt would result in a waiver of trial errors, thus establishing the rule that was applied by the state habeas court here.

This rule was next applied in a decision of the South Carolina Court of Appeals. See State v. Clifton, 396 S.E.2d 831 (S.C. Ct. App. 1990). In Clifton, having determined that reversible error had been committed with respect to a charge against the defendant of possession with the intent to distribute cocaine, the court turned to address the defendant's allegations of error with respect to her separate conviction for possession of cocaine. The court ruled that it was not necessary to consider these remaining issues, reasoning:

> At trial, the defendant admitted she was guilty of possession of cocaine and testified she was willing to plead guilty to that offense. Where, as here, a defendant voluntarily takes the witness stand and testifies that she committed a particular crime, one trial to decide whether she is, in fact, guilty of having committed that crime is enough.

Id. at 833. In support of this proposition, the court cited State v. Howard, 374 S.E.2d 284 (S.C. 1988), and Sroka for the proposition that errors are harmless when the record clearly demonstrates the defendant's guilt. The court also relied on Whetsell for the proposition that "review of trial error is unnecessary where a defendant, after conviction, admitted guilt in open court." Clifton, 396 S.E.2d at 834. Thus, the Clifton court concluded, consistent with prior case law, that

_____

**5** In support of this ruling, the court cited to Sroka, as did the state PCR court in holding Johnson's claims to be procedurally defaulted. Although the Sroka court applied a harmless error analysis rather than a waiver analysis, because the court supported its holding with a reference to the fact that the defendant had admitted his guilt, it is not surprising that some courts have cited Sroka in support of a rule of waiver, particularly in first announcing the latter rule. Undoubtedly, the waiver rule did have its roots in Sroka even though the Sroka court did not itself apply such a rule. Thus, the fact that the Whetsell court and the PCR court cited to Sroka in support of their waiver rulings does not, as the dissent maintains, support a conclusion that a separate waiver rule does not exist.

the admission of guilt gives rise both to a conclusion that any error raised was harmless and to a conclusion that the defendant had waived consideration of all trial errors.

Finally, the South Carolina Supreme Court once again considered the applicability of this procedural rule of waiver based on an admission of guilt in Craddock v. State, 491 S.E.2d 251 (S.C. 1997) (per curiam). The Craddock court was reviewing the denial of a PCR petition filed by a defendant who pled guilty to armed robbery, assault and battery with intent to kill, and grand larceny. Although the petitioner admitted his guilt, he asserted that he would not have pled guilty but for a representation made by his attorney that he would receive a 25-year sentence in exchange for his guilty plea. Relying on Whetsell and the petitioner's admission of guilt, the state PCR court concluded that the petition should be denied. The appellate court, however, determined that the rule enunciated in Whetsell did not apply on the facts presented, reasoning that "[t]he rule set forth in Whetsell applies only where the applicant is not prejudiced by any allegations of the PCR application because of the admission of guilt." Id. at 251.

At first blush, this reasoning is cryptic because a holding that a rule of waiver applies only when the petitioner is not prejudiced thereby (i.e., when the claim of error lacks merit) would turn the concept of a rule of waiver on its ear and could not be squared with the other decisions applying the waiver rule. Thus, by referring to prejudice, it appears that the court intended that the rule of Whetsell should apply only when the error raised is one that would be unaffected by the factual guilt of the petitioner--in other words, one that is cognizable even in the face of an admission of factual guilt. For example, it is the well-established law of South Carolina that a plea of guilty forecloses a defendant from raising all nonjurisdictional errors antecedent to the plea of guilt. See, e.g., State v. Fuller, 174 S.E.2d 774, 777 (S.C. 1970), vacated in part, 408 U.S. 937 (1972). But, a defendant who pleads guilty retains the authority to challenge whether his plea was knowingly and voluntarily entered irrespective of his factual guilt. See Kibler v. State, 227 S.E.2d 199, 201 (S.C. 1976). Similarly, the rule that an admission of guilt waives all trial errors is consistent with a conclusion that such a rule would not prevent a defendant from

12

challenging errors that can be recognized despite the defendant's guilt.**6** Read in this manner, Craddock constitutes merely a refinement of the waiver rule set forth in Whetsell, not an inconsistent application of that rule.**7**

As a review of these decisions makes clear, prior to the decision in Whetsell the South Carolina courts had not yet articulated the procedural rule on which the state PCR court relied in holding that Johnson's admission of guilt procedurally defaulted his assertions of trial error. And, the remaining decisions discussed above are consistent applications of the Whetsell rule. Johnson, however, maintains that two decisions of the South Carolina courts demonstrate that the waiver rule set forth in Whetsell has not been applied consistently. Specifically, Johnson points to the decision of the South Carolina Supreme Court in Johnson's direct appeal of his second Jasper County conviction and State v. Koon, 298 S.E.2d 769 (S.C. 1982), overruled in part by State v. Patterson, 351 S.E.2d 853 (S.C. 1986). On the contrary, these decisions do not demonstrate an inconsistent application of the procedural default rule announced in Whetsell.

In Koon, the court made reference to the fact that the defendant had admitted his guilt during the penalty phase of his capital trial and relied on that fact in addressing one of the defendant's numerous issues on direct appeal. Johnson claims that the failure of the court to employ the waiver rule set forth in Whetsell to bar consideration of the merits of all of the claims raised by the defendant constitutes an inconsistent application of the rule. We disagree.

First, Johnson fails to recognize that the court in Koon did not rely on the waiver rule set forth in Whetsell at all. In rejecting the claim, the court explained:

_____

**6** Indeed, it would be anomalous that the rule of waiver based upon a defendant's admission of guilt would restrict the bases for attack on a conviction more narrowly than a plea of guilty would restrict the bases for attack on a conviction.

**7** Furthermore, even if Craddock did call into question the consistency with which the South Carolina waiver rule has been applied, it would not be appropriate for us to consider the decision because it was decided after Johnson's trial. See Meadows, 904 F.2d at 907 & n.3.

13

> [A]ppellant argues that the trial court erred by not instruct-
> ing the jury on the elements of kidnapping, the alleged
> aggravating circumstance which made this a capital murder
> case. During the penalty phase of trial, the appellant admit-
> ted that he kidnapped and murdered the victim. Where the
> defendant admits an issue in a case, the issue is undisputed;
> therefore, the trial court has no duty to charge it.

Id. at 774. In support of this proposition, the court cited to State v. Weaver, 217 S.E.2d 31 (S.C. 1975), and Stevens v. State, 266 S.E.2d 194 (Ga. 1980), both of which hold that when evidence is insufficient to create a dispute on an issue, a trial judge has no duty to instruct the jury on that issue. See Weaver, 217 S.E.2d at 34; Stevens, 266 S.E.2d at 197. Consequently, it is clear that the Koon court did not intend to apply the waiver rule set forth in Whetsell. Rather, the court was hold-ing only that in light of the defendant's admission of guilt to the kid-napping and murder, the issue of intent was not contested and therefore need not have been submitted to the jury. Because the court was not considering the applicability of the waiver rule announced in Whetsell, and because there is no indication that the rule was advanced by the state as a basis for decision, we cannot conclude that Koon indicates that the rule in Whetsell has been inconsistently applied.

Similarly, in the direct appeal of Johnson's second Jasper County conviction, the South Carolina Supreme Court relied on the fact that Johnson had admitted his guilt during the sentencing phase of the trial in holding that the failure of the trial court to instruct the jury on "mere presence" was harmless. State v. Johnson, 410 S.E.2d 547, 557 (S.C. 1991). The court wrote that Johnson's argument that the trial court should have instructed the jury on mere presence was without merit because "any error would be harmless beyond a reasonable doubt in light of the admission of guilt Johnson made in his state-ments during the closing argument to the jury." Id. Johnson contends that because the court did not rely upon his admission of guilt to default all of the guilt-phase issues, it applied the waiver rule set forth in Whetsell inconsistently. However, as with his argument concerning Koon, Johnson fails to recognize that the court was not considering the applicability of the waiver rule set forth in Whetsell. Rather, the South Carolina Supreme Court relied on the admission of guilt to sup-

14

port a finding that any error in the failure to instruct the jury was harmless. This ruling was perfectly consistent with the decisions of <u>Sroka</u> and <u>Clifton</u>, in which the court relied upon a defendant's admission of guilt in concluding that any error was harmless. And, in light of the fact that the State did not advance the waiver rule set forth in <u>Whetsell</u> as a basis for a ruling that all of the trial errors presented by Johnson were waived, again we cannot conclude that the failure of the court to rely on that rule constituted an inconsistent application of it. <u>See Meadows</u>, 904 F.2d at 907.

In sum, the cases prior to <u>Whetsell</u> upon which Johnson relies do not demonstrate an inconsistent application of the rule that an admission of guilt waives all trial errors because the rule had not yet come into existence. And, Johnson has failed to point to any decision following the announcement of the rule in <u>Whetsell</u> in which that rule was applied inconsistently. Consequently, we conclude that the rule constitutes an adequate procedural ground to foreclose federal habeas review.**8**

_____

**8** The dissent contends that the state-law rule on which the PCR court relied in concluding that Johnson had procedurally defaulted his <u>Brady</u> claim unduly burdens his right to federal habeas review in violation of his Fourteenth Amendment rights. This argument provides no basis upon which this court may consider the merits of Johnson's <u>Brady</u> claim.

First, although the dissent's argument is creative, it is of the dissent's making and not of Johnson's. Johnson raised no argument that the South Carolina procedural default rule on which the state PCR court relied unduly burdens his right to have a federal court consider this issue. As a result, this argument is waived here. <u>See Singleton v. Wulff</u>, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."); <u>11126 Baltimore Boulevard, Inc. v. Prince George's County, Md.</u> , 58 F.3d 988, 993 n.7 (4th Cir. 1995) (en banc) (holding arguments not discussed in appellate briefs are deemed abandoned); <u>Cades v. H & R Block, Inc.</u>, 43 F.3d 869, 876 (4th Cir. 1994) (same).

Second, even if the argument were properly before the court, it lacks merit. The gist of the point raised by the dissent is that because Johnson did not know the facts supporting his <u>Brady</u> claim prior to the admission of guilt giving rise to his procedural default, he did not have a fair opportunity to raise the claim. In support of its position, the dissent cites to

15

B.

The dissent contends that even if the waiver rule set forth in Whetsell is an adequate and independent state-law ground for decision, Johnson has demonstrated cause and prejudice to excuse his procedural default with respect to his claim that the failure of the

_____

Reece v. Georgia, 350 U.S. 85 (1955), in which the Court concluded that a Georgia procedural rule that required a defendant to challenge the racial composition of the grand jury before indictment did not foreclose federal habeas review of that issue. The Court reasoned that "the right to object to a grand jury presupposes an opportunity to exercise that right." Id. at 89. Likewise, the dissent maintains, because Johnson did not know of the facts underlying the Brady claim prior to his admission of guilt, he could not have presented that claim timely. This reasoning, however, ignores the critical difference between the type of default at issue in Reece and that at issue here. Unlike the default at issue in Reece, the default here was premised on an admission of guilt. And, the Supreme Court has recognized that a voluntary plea of guilt waives federal consideration of allegations of antecedent constitutional violations, including challenges to the racial composition of a grand jury, even when a defendant is unaware of facts supporting the challenge prior to his plea. See Tollett v. Henderson, 411 U.S. 258, 266 (1973); United States v. Bluso, 519 F.2d 473, 475 (4th Cir. 1975) (explaining that Tollett compels a "conclusion that a guilty plea advantageous to a defendant must stand despite unknown defences which merely reduce the advantage"); see also McMann v. Richardson, 397 U.S. 759, 770 (1970) (holding that defendant who pled guilty was not entitled to federal habeas review of claim that his confession was obtained unconstitutionally). Thus, the mere fact that a defendant may waive constitutional violations of which he is unaware by admitting his guilt is hardly so inherently unfair that federal habeas review is mandated. Indeed, the hypothetical situation offered by the dissent--in which a defendant who is convicted of a capital murder and faces the choice of making a plea for mercy by admitting his guilt-- is virtually identical to the situation presented when a defendant who, although he believes that he can mount a strong defense to a charge of capital murder, must decide whether to accept a plea bargain requiring him to plead guilty in order to avoid the prospect of the death penalty. In both instances, the individual must choose between admitting guilt with an accompanying waiver of review of both known and unknown issues or maintaining his innocence.

16

prosecution in the Jasper County trial to inform him prior to retrial that one of the witnesses who testified during his first trial, Connie Sue Hess, had recanted a portion of her testimony. See Brady, 373 U.S. at 87. Consequently, the dissent asserts, this court must reach the merits of that claim.

Johnson, however, advanced no argument that he had demonstrated cause and prejudice or a miscarriage of justice to excuse his state procedural default. As such, it is well settled that we do not consider whether cause and prejudice existed. See Gilbert v. Moore, 134 F.3d 642, 656 n.10 (4th Cir. 1998) (en banc) (holding possible cause and prejudice not considered when petitioner fails to argue that any exist), petitions for cert. filed, ___ U.S.L.W. ___ (U.S. May 19, 1998) (Nos. 97-9198; 97-9264); Correll v. Thompson, 63 F.3d 1279, 1288 (4th Cir. 1995) (same); see also Teague v. Lane, 489 U.S. 288, 298 (1989) (same).

Nevertheless, even if we were to consider the question of cause and prejudice sua sponte, we could not conclude that Johnson had made an adequate showing. See Coleman v. Thompson, 501 U.S. 722, 750 (1991) (explaining that defendant has the burden of demonstrating cause and prejudice); Murray v. Carrier, 477 U.S. 478, 494 (1986) (holding that prejudice is demonstrated when petitioner shows that error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension" (internal quotation marks omitted)). For the reasons set forth below in section C, we hold that Johnson has not demonstrated prejudice.

C.

Even if we were to conclude that these issues were not procedurally defaulted due to Johnson's admission of guilt, we nevertheless would find no basis for relief. With the exception of issues (1) and (2), each of the claims was held by the district court to be procedurally defaulted for additional reasons. And, the district court determined that all of these issues lacked merit in any event. We agree with the reasoning of the district court with respect to these alternative assessments of Johnson's claims.

A more extended analysis of the argument that the dissent finds troubling--Johnson's assertion that the prosecution denied him due

17

process of law in violation of the Fourteenth Amendment by failing to disclose to him that Hess had recanted a portion of her testimony --is necessary. An examination of the facts underlying this claim demonstrates why Johnson's argument lacks merit.

During Johnson's first trial in Jasper County for the murder of Trooper Smalls, the prosecution did not call Hess, one of the individuals traveling in the RV when the murders were committed, as a witness because it was not sure what her testimony would be in light of her prior inconsistent statements. However, Hess was called as a defense witness and initially testified that she did not see who murdered Trooper Smalls. Defense counsel presented Hess with a statement she had given law enforcement officers on the day after the murders in which she had stated that Harbert had killed both Swansen and Trooper Smalls. On cross-examination, Hess testified that Johnson had in fact murdered both Swansen and Trooper Smalls. In addition, she acknowledged that she had made other prior statements in which she had stated that Johnson was responsible for the murders. On redirect, in response to questioning from defense counsel concerning the changes in her statements, Hess agreed that in order to avoid the death penalty she would say anything.

Johnson was convicted of murdering Trooper Smalls in the Jasper County prosecution and later pled guilty to the murder of Swansen in Clarendon County. Johnson's Jasper County conviction was overturned on direct appeal and remanded for retrial. Subsequent to Johnson's guilty plea in Clarendon County but prior to his Jasper County retrial, Hess contacted attorney Marion Riggs, who had represented her in connection with charges arising out of Swansen's murder, and informed him that she had lied in her prior testimony and that Harbert had actually murdered Swansen. Pursuant to Hess' request, Riggs sent a letter to the Sheriff of Clarendon County, Horace Swilley, informing him that Hess had recanted her testimony with respect to the Clarendon County murder; importantly, no reference was made to the Jasper County murder of Trooper Smalls. Defense counsel in the Jasper County retrial was not provided with a copy of the letter from Riggs or informed of Hess' recantation. And, rather than attempting to bring Hess back to South Carolina from Nebraska to testify, defense counsel presented her testimony from the first trial during Johnson's retrial in Jasper County.

18

Johnson maintains that the prosecution's failure to reveal Hess' recantation violated his Fourteenth Amendment rights. Suppression of exculpatory evidence by the Government that is material to the outcome of a trial violates due process, irrespective of the motivation of the prosecutor. See Brady, 373 U.S. at 87. And, evidence is material when "its suppression undermines confidence in the outcome of the trial"--that is, when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). Johnson's claim lacks merit because neither the Jasper County prosecutor's office nor the law enforcement officials investigating the murder of Trooper Smalls was aware of the letter and because the letter was not material.

First, we cannot conclude that any member of the Jasper County prosecutor's office or law enforcement officers investigating Trooper Smalls' murder received the letter from attorney Riggs to Clarendon County Sheriff Swilley. The PCR court that examined the evidence presented on this matter concluded:

> There is no evidence in the Record that the letter from Mr. Riggs, indicating that Connie Sue Hess had recanted her testimony, was ever received by the Solicitor's Office of the Fourteenth Judicial Circuit, the Sheriff's Department in Jasper County, or any other law enforcement agency directly involved in the Jasper County case. As such, neither the Jasper County Sheriff's Department, the Fourteenth Judicial Circuit Solicitor's Office, nor any other law enforcement agency directly connected to the Jasper County case had possession of this document. If they did not have possession of this document, it cannot be the case that they failed to disclose it under the appropriate discovery rules prior to [Johnson's retrial.]

J.A. 2793. Moreover, the PCR court rejected Johnson's claim that Sheriff Swilley testified that he had forwarded the letter to a law enforcement agency connected with the investigation of the murder of Trooper Smalls or the Fourteenth Judicial Circuit Solicitor's Office. Rather, the PCR court found, a careful review of Sheriff Swilley's testimony indicated that although to the best of his recollection

19

he would have passed the letter along the appropriate channels, he had no independent recollection of actually having done so. Johnson has presented no clear and convincing evidence to convince us that this factual finding by the state court is not entitled to our deference. See 28 U.S.C.A. § 2254(d)(2), (e)(1). And, the decision of the state PCR court that the letter was not known to members of the solicitor's office responsible for prosecution of the Jasper County murder or law enforcement officials investigating the murder of Trooper Smalls was not contrary to or an unreasonable application of clearly established federal law as decided by the Supreme Court. See 28 U.S.C.A. § 2254(d)(1); Green v. French, 143 F.3d 865, 870 (4th Cir. 1998); cf. Reddy v. Jones, 572 F.2d 979, 982-83 (4th Cir. 1997) (holding that the prosecution could not be held responsible for failing to disclose exculpatory information known by law enforcement officials who were not a part of the investigation or prosecution of the defendant's case).

Furthermore, there is no reasonable probability that Hess' recantation of her prior testimony that Johnson was responsible for the Swansen murder in Clarendon County would have affected the verdict of guilty reached in Johnson's Jasper County retrial for the murder of Trooper Smalls. It is critically important to focus on the evidence Johnson alleges was withheld. The only information contained in the letter was that Hess had recanted her testimony that Johnson had murdered Swansen in Clarendon County. The letter did not indicate that Hess had recanted her testimony that Johnson murdered Trooper Smalls in Jasper County--the murder for which Johnson was being retried. We cannot believe that a jury would have found Hess' position that Johnson was not responsible for the Swansen murder--a murder he himself had admitted--to be exculpatory with respect to Trooper Smalls' murder, especially in view of the fact that the jury was aware that Hess had changed her story on several previous occasions.

We therefore conclude that even if Johnson had not procedurally defaulted his claim that the prosecution denied him due process by failing to disclose Hess' recantation prior to his Jasper County retrial, it is without merit. And, having determined that Johnson's Brady claim lacks merit, we have no difficulty in concluding that the rejection of this claim by the state court was not contrary to or an unrea-

20

sonable application of clearly established federal law. See 28 U.S.C.A. § 2254(d)(1); Green, 143 F.3d at 870.

D.

In sum, the state PCR court found all of the issues relating to Johnson's guilt in the Jasper County trial to be procedurally defaulted, and Johnson has failed to show that this state-law ground for decision is not adequate and independent. Furthermore, Johnson does not argue that cause and prejudice or a miscarriage of justice exist to excuse his procedural default. Thus, we conclude that the district court properly determined that Johnson had procedurally defaulted all of his claims relating to the guilt phase of his Jasper County trial.

III.

Johnson next argues that he was deprived of effective assistance of counsel during the sentencing phase of the Jasper County proceedings because counsel failed to investigate or present mitigating evidence concerning his frontal lobe syndrome, alcohol and substance abuse, depression, mixed personality disorder, and history of emotional and physical abuse. In reviewing counsel's performance, the state PCR court heard testimony from a clinical psychologist, a forensic psychiatrist, and a social worker. Additionally, the state PCR court examined affidavits of friends, family members, a neuro-pharmacolologist, and a behavioral neurologist. The state PCR court held that this testimony did not warrant a conclusion that Johnson was deprived of effective assistance of sentencing counsel. Specifically, the state PCR court found the credibility of the expert witnesses undermined by the fact that in forming their opinions they had relied on hearsay statements obtained by counsel for Johnson and had not conducted any type of independent assessment of whether the information contained in the hearsay documents was accurate. Moreover, the state PCR court found the credibility of the fact witnesses to be questionable. Finally, the state PCR court found that the evidence offered by Johnson was equally as likely to have been detrimental to his case as beneficial.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 688 (1984). A defendant is deprived of this constitutional

21

guarantee when counsel's performance falls "below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688, 694. Among the duties incumbent upon counsel is "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691; see Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir.) (explaining that "`[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments'" (quoting Strickland, 466 U.S. at 691)), cert. denied, 118 S. Ct. 595 (1997).

Johnson contends that counsel was ineffective for failing to conduct an adequate investigation to develop mitigating evidence. We, however, are unable to conclude that the application of Strickland by the state PCR court "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C.A. § 2254(d)(1).**9** Counsel presented the testimony of two family members and a minister. The minister knew Johnson personally and testified concerning his improved behavior while in prison, the poor relationship between Johnson and his father, and the lack of a threat that Johnson posed to others. Johnson's mother testified that Johnson

_____

**9** Johnson maintains that the district court erred in applying the AEDPA standards of review because the state PCR court simply signed a proposed order submitted by the Attorney General and thus the issues did not receive the type of independent review that Congress envisioned in establishing the deferential standards of review adopted in the AEDPA. We, however, cannot say that the decision of the state court to adopt a proposed order verbatim proves that the state court did not render a reasoned decision on the issues presented. Cf. Correll, 63 F.3d at 1293 n.11 (rejecting habeas petitioner's argument that the district court should not have applied the § 2254(d) presumption of correctness to state factual findings because the state habeas court adopted verbatim the Commonwealth's proposed findings of fact).

Johnson also contends that the district court misinterpreted the AEDPA standards of review by failing to apply a de novo review of legal issues. This argument was recently rejected by our decision in Green, 143 F.3d at 870.

22

did not have a history of violence toward others, grew up with an alcoholic father who beat him, had a history of drug abuse, and had a history of head injuries and blackouts. And, Johnson's sister confirmed much of the information that Johnson's mother related. On these facts, we cannot say that the state PCR court was unreasonable in concluding that counsel did not perform unprofessionally in failing to investigate further.

Moreover, even if the state PCR court was unreasonable in concluding that counsel's performance was within the broad range of professionally acceptable conduct, we are not convinced that the court was unreasonable in concluding that Johnson failed to satisfy the prejudice prong of Strickland. Although evidence that a defendant suffers from a mental impairment, has abused drugs or narcotics, or suffered a history of abuse may diminish his blameworthiness for his crime, this evidence is a double-edged sword that a jury could well find to be aggravating rather than mitigating. See Howard v. Moore, 131 F.3d 399, 421 (4th Cir. 1997) (en banc), petition for cert. filed, ___ U.S.L.W. ___ (U.S. May 22, 1998) (No. 97-9263). As such, the evidence that Johnson argues would have been obtained if counsel had performed competently does not undermine our confidence in the verdict, much less convince us that the state PCR court was unreasonable in concluding that Johnson had failed to show prejudice.

IV.

With respect to the Clarendon County convictions, Johnson first maintains that his guilty plea was involuntary because trial counsel failed to inform him that a confession he provided to law enforcement officers concerning the events surrounding Swansen's murder was inadmissible. If counsel had so informed him, Johnson asserts, he would not have pled guilty and would have insisted on going to trial.

When a defendant pleads guilty upon advice of counsel, the voluntariness of the plea depends upon whether the advice "was within the range of competence demanded of attorneys in criminal cases." See Hill v. Lockhart, 474 U.S. 52, 56 (1985) (internal quotation marks omitted). The two-part standard adopted in Strickland for evaluating claims of ineffective assistance of counsel--requiring that a defendant show "`that counsel's representation fell below an objective standard

23

of reasonableness'" and "`that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'"--applies to guilty plea challenges based on ineffective assistance of counsel. Id. at 57-58 (quoting Strickland, 466 U.S. at 688, 694). In order to satisfy the second of these requirements, Johnson must demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

The state PCR court concluded that Johnson's statements that he would not have pled guilty and would have gone to trial were self-serving and lacked credibility. On the other hand, the court found credible the testimony of Johnson's trial attorney, who testified that the evidence against Johnson was overwhelming and that Johnson did not rely upon the admissibility of the statement in determining whether to plead guilty. Neither this factual finding nor the ruling of the state PCR court that Johnson cannot show prejudice is unreasonable. See 28 U.S.C.A. § 2254(d).

V.

Johnson also asserts that his guilty plea to the Clarendon County crimes was involuntary because the State failed to disclose evidence that Swansen was mentally ill, unstable, and prone to outbursts of violence and that Harbert had engaged in a homosexual act with Swansen on the night of the murder. Johnson maintains that the State's failure to disclose this evidence to him violated his due process rights under Brady.

The state PCR court, however, disagreed. Again, the state PCR court concluded that Johnson's assertions that he would have gone to trial if he had known of this evidence lacked credibility and that Johnson's attorney's statements that this evidence would not have affected Johnson's decision of whether to go to trial were credible. Under these circumstances, we cannot say that the determination of the state PCR court was unreasonable. See 28 U.S.C.A.§ 2254(d).**10**

_____

**10** Because, as discussed above, Johnson's Clarendon County convictions are not constitutionally invalid, Johnson's argument that the use of the Clarendon County convictions during the sentencing proceeding in Jasper County was violative of due process lacks merit.

24

VI.

In sum, we conclude that all of Johnson's claims relating to the guilt phase of the Jasper County proceeding are procedurally defaulted. Furthermore, Johnson's claims that he was deprived of effective assistance of counsel in the Jasper County sentencing proceedings and the Clarendon County proceedings lack merit.

AFFIRMED

ERVIN, Circuit Judge, concurring in part and dissenting in part:

I have no quarrel with the majority's affirmance of the judgment of the district court denying the writ as to Johnson's Clarendon County conviction and sentence of life imprisonment. For the reasons articulated below, however, I cannot agree with the majority's deference to South Carolina's so-called "admission of guilt" procedural default rule and its effect on Johnson's claim that material, exculpatory evidence was withheld from him during his trial. On this question, I would reverse the judgment of the district court and grant Johnson's petition for a writ of habeas corpus as to his Jasper County conviction. Accordingly, I respectfully dissent.

I.

Recognizing the so-called procedural default in this case effects a complete denial of Johnson's right to due process. For that reason, I find that South Carolina's procedural rule violates, at the most basic level, the Due Process Clause of the Fourteenth Amendment. According to the PCR court, Johnson procedurally defaulted any claims he might have that he was denied constitutionally protected rights at the guilt phase of his trial because of his closing argument to the jury during the sentencing phase.

My understanding of a rule of procedure is that it is one that can be mechanically and neutrally applied, without regard to the substance of the argument at issue. We are, of course, familiar with the operation of these kinds of procedural rules, such as the failure to present a contemporaneous objection at trial, the failure to raise an

25

issue on direct appeal, or the failure to raise an issue in post-conviction proceedings. These manners of procedural default, which are well recognized as adequate and independent state law grounds, illustrate the majority's error in calling the rule in this case a rule of procedure.

When exactly did Johnson violate a South Carolina rule of procedure such that our court should ignore Johnson's allegation of a fundamental violation of his right to a fair trial? According to the State and the PCR court, this procedural violation occurred during the <u>closing argument</u> to the jury at the sentencing phase of Johnson's trial. I cannot concur in the majority's acceptance of a rule of procedural default that can be triggered during the course of closing argument at the sentencing phase of a capital trial.

Johnson and his counsel were both given the opportunity to present closing arguments to the jury at the sentencing phase. Johnson told the jury that "I have no defense for anything," and that "[a]ll I have is sorrow [for] the lives that I have ruined." Almost immediately afterward, Johnson broke down in tears and was unable to continue. This statement should be viewed in the context in which it was spoken. The jury had already determined Johnson's guilt during the guilt-innocence phase. At the sentencing phase, Johnson was in the position of trying to convince the same jury that had convicted him to spare his life. The only reasonable thing to do in that position, I assume, is to show remorse for the crime, even if he believed he had been wrongfully convicted of it. Johnson's so-called "admission of guilt" was no such thing; it was a plea for mercy to a jury that had just found him guilty of killing a South Carolina trooper.

To understand why South Carolina's rule of procedure cannot survive constitutional scrutiny, imagine that you have been convicted of capital murder in South Carolina for a crime you did not commit because the prosecution has withheld evidence of your innocence.[1] During the sentencing phase of your trial you have no knowledge that the prosecution has denied you access to evidence that would exculpate you of the crime. Nonetheless, because of South Carolina's rule

_____

[1] This is precisely Johnson's claim in this federal habeas petition, <u>see</u> <u>infra</u> p. 37-40.

26

of procedural default, you must be very careful in what argument you present to the sentencing jury. If you or your lawyer, in an attempt to beg the mercy of the jury to spare your life, present an argument that could be construed as an "admission of guilt," by operation of South Carolina procedure you will have waived any right to challenge your conviction in any subsequent proceeding, including both state post-conviction and federal habeas.

State procedural rules cannot be used to unduly deprive a litigant of his right to have his federal constitutional claim adjudicated. See Spencer v. Kemp, 781 F.2d 1458, 1470 (11th Cir. 1986) (en banc) ("It is a dominant theme of the Supreme Court case law . . . that a federal habeas petitioner shall not be denied federal review of a federal constitutional claim on the basis of an asserted state procedural ground that is manifestly unfair in its treatment of that claim."). It has long been within the province of the federal courts to inquire whether a federal right has been denied, not only in express terms, but in substance and effect, as by putting forward a state law ground that is without fair or substantial support. Ward v. Board of County Comm'rs of Love County, 253 U.S. 17, 22 (1920). In state court, when the assertion of a federal right is "plainly and reasonably made," the federal claim "is not to be defeated under the name of local practice." Davis v. Wechsler, 263 U.S. 22, 24 (1923).

A fundamental question in this case is whether South Carolina's rule of procedure adequately protects Johnson's right to due process of law. The effect of South Carolina's procedural rule in this case is a serious one: no court will ever consider Johnson's claim that the prosecutor withheld exculpatory evidence during his trial. Johnson presented this claim to the state courts as soon as the facts underlying the claim became available to him. But according to South Carolina's rule of procedure, Johnson's claim must be defaulted because of comments that Johnson made during the course of closing arguments to the jury during the sentencing phase. In my view, any rule of procedure that operates in this manner, retroactively defaulting claims of prosecutorial misconduct or ineffective assistance of defense counsel, cannot comply with notions of fundamental fairness or due process of law.

Imagine that the State had failed to provide Johnson a lawyer at all during his capital trial. Had Johnson made an "admission of guilt"

27

during his pro se argument to the jury at the sentencing phase, would this court be powerless to grant the writ because of the operation of South Carolina's so-called procedural rule? I take it that the majority's acceptance of South Carolina's procedural rule in this case would compel the same result in my hypothetical example.

But we need not go this far in order to reach the merits of this case. The Supreme Court's decision in Reece v. Georgia , 350 U.S. 85 (1955), is illustrative. Reece was convicted of rape in a Georgia state court and, on direct appeal to the Georgia Supreme Court, sought to challenge the racial composition of the grand jury that indicted him. That court refused to consider this challenge because, under Georgia practice, objections to a grand jury must be made before the indictment is returned. The United States Supreme Court granted certiorari review. The Court observed that the Georgia procedural rule had been consistently followed in that state since 1882. Reece, 350 U.S. at 89. The Court also noted, however, that Reece had no knowledge of the grand jury nor benefit of counsel before his indictment, id. at 86, and that Reece was semi-illiterate and "of low mentality." Id. at 89.

While accepting the general validity of the Georgia procedural rule, the Court held that the application of the rule in this specific context violated Reece's right to due process. The Court held that "the right to object to a grand jury presupposes an opportunity to exercise that right." Id. at 89. Citing a companion case, the Court stated that the test for due process in this situation is whether a defendant was given "a reasonable opportunity to have the issue as to the claimed right heard and determined by the state court." Michel v. Louisiana, 350 U.S. 91, 93 (1955). In the circumstances of that case, the Court held that "it [was] utterly unrealistic to say" that Reece had any opportunity to exercise his right to challenge the composition of the grand jury.

Reece holds that a state procedural rule that is facially valid and has been consistently followed will not preclude review of federal claims where its application in a particular case does not satisfy constitutional requirements of due process of law. Paraphrasing Reece, Johnson's right to object to the prosecution's withholding of material, exculpatory evidence at trial presupposes an opportunity to exercise that right. I am at a loss to understand how the State has provided any opportunity for Johnson to present his claim.

28

The majority distinguishes <u>Reece</u> by noting that the default at issue in that case was an attack on the racial composition of the jury, while Johnson's default was "an admission of guilt." The majority then observes that a voluntary <u>plea of guilt</u> waives consideration of antecedent constitutional violations. <u>Maj. op.</u> at 15-16 n.8. Lest there be any confusion, I should emphasize that Johnson did not plead guilty in Jasper County; his plea was not guilty. Cases that involve waiver of claims when a defendant enters a guilty plea, therefore, are not controlling law in the disposition of this case.

The majority seems to argue that waiver of constitutional issues is not such a remarkable proposition as to warrant concern about the denial of fundamental fairness. That may be true in a generalized, theoretical sense. But in order for that proposition to govern this case, we must believe that there is no distinction between a defendant's plea of "guilty" to an offense, and the so-called admission of "guilt" during a capital murder defendant's attempt to beg for his life before a sentencing jury. While I believe the first situation properly requires a defendant to waive challenges to antecedent error, I cannot believe the second situation is at all related to the first. The first is a <u>legal</u> recognition of wrongdoing and acceptance of responsibility, while the second is a practical strategy that is required by the unique context of a capital sentencing proceeding before a jury that has already rendered a verdict of guilt. The difference between these situations is illustrated by the procedures that must be followed, and the warnings that must be given, before a court can even accept a guilty plea. <u>See</u> Fed. R. Crim. P. 11.

Because of the nature of a capital sentencing proceeding, we cannot attach the same waiver-consequences to the presentation of the case in mitigation as we do to the decision to enter a guilty plea to an offense. Indeed, any rule that prohibits a capital defendant from presenting relevant evidence in mitigation is not only unwise but contrary to the Eighth and Fourteenth Amendments. <u>See Skipper v. South Carolina</u>, 476 U.S. 1, 4-5 (1986) (mitigating evidence defined as evidence that might serve "as a basis for a sentence less than death"); <u>Lockett v. Ohio</u>, 438 U.S. 586, 604 (1978) (plurality opinion of Burger, C.J.) (holding that the sentencer in a capital case cannot be precluded from considering mitigating factors).

29

As in <u>Reece</u>, it is utterly unrealistic to say that the State has afforded Johnson any meaningful opportunity to exercise his right to present his <u>Brady</u> claim before a South Carolina court. Whether the procedural rule in this case is facially invalid, or simply invalid as applied in this particular instance, it is incompatible with the notion of fundamental fairness that inheres in the Due Process Clause of the Fourteenth Amendment.

II.

The arguments above are only the broadest and most general ways that South Carolina's rule of procedural default impermissibly burdens Johnson's right to have his federal claim heard. More specific reasons, which exist within the well-established framework for considering whether a state procedural rule is an adequate and independent ground, also compel a finding that we should not defer to South Carolina's procedural default in this case.

In order to be an adequate state law ground, the rule of procedure must be regularly or consistently applied by the state court. <u>See Johnson v. Mississippi</u>, 486 U.S. 578, 587 (1988). The majority holds that South Carolina's "admission of guilt" rule of procedure is regularly and consistently applied. It arrives at this holding after a painstaking examination of the South Carolina caselaw that touches on the so-called procedural rule at issue in this case. According to the majority, five reported cases (<u>Patterson</u>, <u>Sroka</u>, <u>Whetsell</u>, <u>Clifton</u>, and <u>Craddock</u>) involve a criminal defendant's "admission of guilt," but careful analysis reveals that only the three most recent cases apply a procedural rule. The earlier cases, <u>Patterson</u> and <u>Sroka</u>, instead involve a harmless error analysis. For the reasons that follow, I believe that the majority's analysis is in error in several respects.

We should begin our analysis with the decision of the South Carolina court that invoked the procedural rule at issue here -- the state PCR court. In its discussion of the rule at issue in this case, the PCR court held: "The State Supreme Court has long held that an admission of guilt constitutes a waiver of all claims that one's conviction is improper." The authorities cited for this proposition are, first, <u>State v. Sroka</u>, 230 S.E.2d 816 (S.C. 1976), and second, <u>Whetsell v. State</u>, 277 S.E.2d 891 (S.C. 1981). According to the majority, however, <u>State v.</u>

30

Sroka is not a case in which this procedural rule was applied. In fact, the majority asserts that the "admission of guilt" procedural rule "had not yet come into existence" at the time Sroka was decided. Maj. op. at 15. According to the majority, then, the PCR court's citation to Sroka as justification for invoking the procedural rule is wrong.**2**

In effect, the majority holds that the PCR court erred in its interpretation of South Carolina law. As the majority itself recognizes, the law of our circuit forbids us from correcting errors of state law on federal habeas review. Barnes v. Thompson, 58 F.3d 971, 974 n.2 (4th Cir. 1995). This point alone compels a rejection of the majority's analysis. Not only does the majority err in reviewing an issue of state law, however, but its analysis of South Carolina law is incorrect. Although we are precluded on habeas review from telling South Carolina courts what their own state law is, I must come to the defense of the PCR court's interpretation of South Carolina law, given the majority's extended discussion of South Carolina law which holds that the PCR court has misinterpreted its own state's precedents.

According to the majority, the "admission of guilt" procedural rule has its genesis in the South Carolina Supreme Court's decision in Whetsell. In Whetsell, two criminal defendants who pled guilty to charges of housebreaking and grand larceny sought relief from their convictions based on ineffective assistance of counsel. The court rejected the claim, citing the "general rule that guilty pleas, freely and voluntarily entered, act as a waiver of all non-jurisdictional defects and defenses," including a claim of ineffective assistance of counsel. Whetsell, 277 S.E.2d at 892. Of course, because Johnson pled not guilty in this case, this is not the rule at issue here.

The court in Whetsell continued: "Furthermore, review of a trial error is unnecessary where a defendant admits in open court after his conviction that he is guilty." Id. In its citation to this portion of

_____

**2** On several occasions, the majority refers to the "procedural rule on which the PCR court relied." When the majority uses this phrase, it does so in a theoretical sense -- in effect, "the rule on which the PCR court would have relied, had it properly understood South Carolina law with regard to `admissions of guilt' and procedural default." The rule on which the PCR court actually relied in its written opinion is Sroka.

31

Whetsell, the majority underlines the entire sentence and announces: "This ruling is the first time that the South Carolina Supreme Court announced clearly that an admission of guilt would result in a waiver of trial errors, thus establishing the rule that was applied by the state habeas court here." Maj. op. at 11. According to the majority's analysis, this holding is a clear break from any rule previously invoked by South Carolina courts. Curiously, however, the majority chooses to omit the citation that immediately follows this ground-breaking sentence. See id. The majority is clever to omit the citation because the case which is cited as authority for this rule is Sroka. Whetsell, 277 S.E.2d at 892. The majority propounds an elaborate theory of how Sroka does not announce the same rule upon which the Whetsell court relies, but omits the citation in Whetsell (the smoking gun, as I see it) that definitively contradicts the majority's creative and novel interpretation of South Carolina caselaw.

How the majority can read Whetsell, and its citation to Sroka, and claim that Sroka and Whetsell are premised on different legal doctrines (harmless error versus procedural default) is utterly bewildering. Any fair reading of Whetsell (and Clifton, for that matter, which also cites Sroka) indicates that the rules invoked in all these cases (Sroka, Whetsell, Clifton, and Craddock) are the same. The majority's interpretation of these cases has no support in South Carolina caselaw. Not only is there no South Carolina case that supports the majority's interpretation, the cases themselves, when read in a commonsense, reasonable manner, are not consistent with the majority opinion.

I am confident that my interpretation of the South Carolina caselaw is correct, in part, because it is in accord with the position of the South Carolina Attorney General. In its brief, the State agrees with the PCR court that all Johnson's claims challenging his conviction are procedurally defaulted by virtue of his "admission of guilt." In support of this argument, the State cites to Sroka and no other case. Appellees' Br. at 59. The State then offers argument that the admission of guilt procedural rule "is a well recognized procedural bar that is regularly followed in State court." Id. at 60. In the paragraphs that follow this claim, the State's brief discusses two cases: Sroka and Patterson. In contrast, the majority holds that Sroka and Patterson are not cases that invoke the procedural rule at issue in this case.

32

The following paragraphs in the State's brief discuss Whetsell and Clifton with no mention that Whetsell was the case that supposedly originated the procedural rule invoked here. The State makes no mention of the subtle distinctions that the majority perceives in South Carolina caselaw; rather, the Attorney General, in accord with the decisions of the South Carolina courts, treats Sroka, Patterson, Whetsell, and Clifton as authorities which support a single rule of procedure. I am perplexed by the majority's holding that Sroka did not invoke the procedural rule at issue in this case when both the state PCR court and the South Carolina Attorney General have told us that Sroka does stand for that proposition.

This entire argument, the definition of the "admission of guilt" procedural rule and whether it has been consistently applied, is much like the enterprise of trying to fit a square peg in a round hole. The difficulty of even defining what South Carolina's rule is in this case should be an indication that this "admission of guilt" doctrine, whatever it is, is not a rule of procedure. The South Carolina Supreme Court's recent decision in Craddock v. State, 491 S.E.2d 251 (S.C. 1997), makes clear that the so-called "rule" at issue in this case is harmless error review disguised in waiver and procedural garb. In Craddock, the court refused to apply the "admission of guilt" procedural default line of cases to bar the PCR application of a prisoner who alleged the ineffective assistance of counsel in his armed robbery, assault and battery, and grand larceny convictions. In his PCR hearing, Craddock admitted his guilt, but alleged that he would not have pled guilty but for the fact that his counsel promised that he would receive a twenty-five year sentence in exchange for his plea. The PCR court directed a verdict for the State, invoking procedural default for the "admission of guilt," but the supreme court vacated that order. The court held that the "admission of guilt" rule could not apply because "his admission of guilt did not render [Craddock's ineffective assistance of counsel claim] non-prejudicial." Craddock, 491 S.E.2d at 251.

The majority recognizes the problems of deferring to a rule of procedure that only operates when it would be "non-prejudicial," and for that reason, believes that Craddock "constitutes merely a refinement of the waiver rule set forth in Whetsell." Maj. op. at 13. True procedural rules (for example, filing deadlines and requirements of contem-

33

poraneous objection) may require <u>interpretation</u> in various contexts, but the rules themselves are not subject to "tinkering" in the way the majority believes the court "refined" the rule in <u>Craddock</u>. <u>Craddock</u> illustrates that what we are dealing with in this case is not a procedural rule at all, but rather, a harmless error doctrine that has been infiltrated by the language of waiver and default.

The majority would be content to allow South Carolina to adopt a procedural rule that is contingent upon a South Carolina court's case-by-case determination that a defendant will not be prejudiced by its invocation. According to the majority, so long as South Carolina terms this exercise a rule of "procedural default," we shall not inquire as to whether it can be said that this rule has been, or can be, consistently applied. As I have argued, I do not believe there is any such thing as an "admission of guilt" procedural rule in South Carolina. Even if there is such a rule, the South Carolina courts' interpretation of that rule demonstrates that it has not been, and cannot be, consistently applied. The majority attempts to save this so-called rule by whittling away those decisions which render its invocation inconsistent, leaving us with a rule of procedure that has been applied by South Carolina courts in only three reported cases.

In sum, a state may not insulate important constitutional claims from federal review by categorizing harmless error review as a rule of procedure, then making application of the "rule" contingent upon both the substance of the closing argument at the sentencing phase of trial and a case-by-case determination of the prejudice that resulted from the constitutional error alleged by the defendant. If South Carolina's so-called procedural rule exists, it has not been consistently applied, and therefore it is not an adequate and independent state law holding to which we as a federal court must defer.

III.

A.

Assuming that I have been wrong in all my previous observations, Johnson is still entitled to have his <u>Brady</u> claim heard on the merits. If Johnson has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, he is barred from

34

raising those claims on federal <u>habeas</u> unless he can show cause for the default and prejudice resulting therefrom.**3** <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87-91 (1977). Johnson may demonstrate cause with "a showing that the factual or legal basis for a claim was not reasonably available to counsel" at the time of the default. <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986); <u>George v. Angelone</u>, 100 F.3d 353, 364 (4th Cir. 1996).

Johnson's showing of "cause" for his default is irrefutable. Johnson presented his <u>Brady</u> claim to the state PCR court, which considered and denied the claim on its merits. In the alternative, the PCR court held that Johnson had procedurally defaulted this claim during the course of his remarks to the jury at the sentencing phase of his trial.**4**

_____

**3** The majority is correct that the law in our circuit forbids us from considering whether "cause and prejudice" excuse a procedural default unless the petitioner presents the argument, <u>Gilbert v. Moore</u>, 134 F.3d 642, 656 n.10 (4th Cir. 1998) (en banc), although, contrary to our circuit's precedent, I do not believe such a rule is required under, or even suggested by, <u>Teague v. Lane</u>, 489 U.S. 288, 298 (1989). Nevertheless, the majority believes that Johnson has not advanced a cause and prejudice argument, and for that reason, we should not consider it.

I must concede that Johnson's briefs do not indicate an argument using the language of "cause and prejudice" that would excuse the default. However, my recollection from oral argument, and the handwritten notes of my law clerk, indicate that Johnson's counsel offered a "cause and prejudice" argument at oral argument in response to questions on this issue from Judge Wilkins. Unfortunately, the tape of the oral argument has been misplaced, and there is no way to independently confirm the accuracy of my memory or the notes of my law clerk.

Due to the seriousness of Johnson's <u>Brady</u> claim, and the consequences to Johnson should we choose not to address the merits of that claim, I am disposed to consider a claim of cause and prejudice in this case, even one raised for the first time at oral argument. I should also note that the cause and prejudice analysis is an alternative argument, and that my principal concern lies in the majority's holding that the so-called procedural rule that has been invoked in this case is an adequate state law ground for decision -- that it has been regularly and consistently applied by the South Carolina courts. On this issue, Johnson has offered extensive, and persuasive, arguments.

**4** The federal district court below, after rejecting the <u>Brady</u> claim on the merits, relied on the PCR court's "procedural default" alternative holding in its own alternative holding. <u>J.A.</u> at 533.

35

Johnson therefore can show cause for this default if he proves that the factual basis for his Brady claim was not reasonably available to counsel during the sentencing phase of the trial. There can be no doubt that Johnson has made such a showing.

By definition, a Brady claim cannot be reasonably available to a defendant during the course of his trial. A Brady claim is an allegation of concealment that can only come to light after a trial when the withholding is made known to the defense during post-conviction fact-finding. If the defense knows of exculpatory information in the prosecutor's possession during trial, he would surely ask for it. And even if defense counsel did not ask for the information, it does nothing to excuse the prosecutor's independent duty to disclose any material, exculpatory information on his own initiative. Like an allegation of ineffective assistance of counsel, the factual basis for a Brady claim can only be reasonably available to the defendant after trial.

This discussion highlights the absurdity of the"procedural rule" at issue in this case. Under South Carolina's rule of procedure, certain defendants who make "admissions of guilt" (those defendants who fail to demonstrate prejudice pursuant to Craddock) must make a Brady claim prior to the sentencing phase of their trial in order to avoid a procedural default. The consequence of failing to raise your Brady claim during trial is that no state or federal court (direct appeal, PCR, or federal habeas) will ever consider your Brady claim on its merits. Assuming once again that this scheme is constitutional, Johnson, at the very least, has shown cause for his failure to conform to South Carolina's rules of procedure.

B.

In order to overcome procedural default, Johnson must also show that he was prejudiced at trial by the error of which he complains. Coleman, 501 U.S. at 750. I believe that Johnson easily meets this burden, and this discussion illustrates what troubles me so greatly about the majority's holding.

Johnson was convicted on the basis of the testimony of two witnesses, the only two people who can offer an eyewitness account of

36

the events that led to Trooper Smalls's death.**5** The two witnesses were Johnson's cohorts in the RV when Trooper Smalls was killed: Curtis Harbert and Connie Sue Hess. After the shooting, in her first statement to the police, Connie Sue Hess stated that Harbert had killed Trooper Smalls. Later, Hess changed her testimony and averred that Johnson had killed Trooper Smalls. At Johnson's first trial, Hess and Harbert both testified that Johnson shot the trooper, while Hess admitted that in her first statement she had said Harbert killed Trooper Smalls. After Johnson's conviction was reversed by the South Carolina Supreme Court on direct appeal, Harbert again testified against Johnson at his second trial. Hess' testimony from the first trial was read to the jury at the second trial, presumably because Hess had returned to her home in Nebraska and was unable to return to South Carolina. Although Harbert and Hess had both been indicted for the murder of Trooper Smalls, the Jasper County prosecutor dropped all charges against them after their testimony against Johnson.

There is no physical evidence that links Johnson to the murder of Trooper Smalls. What little physical evidence that does exist in this case appears to exonerate Johnson of the crime. After Johnson's arrest, the police took swabs of his hands for gunpowder residue. The tests were negative even though, as a state law enforcement officer admitted, the swabs were taken well within the time frame in which gunpowder residue should have been present on Johnson's hands if he had fired a gun. See J.A. at 953-54. Harbert's hands were not tested until approximately three hours after Johnson was tested. While Harbert's test was also negative, the result was inconclusive because too much time had elapsed between the murder and the test in order to obtain an accurate result. See id.

_____

**5** A third witness, Ronnie Dale Stevenson, also testified against Johnson at trial, although his testimony surely had little effect on the jury. Stevenson, a regular police informant with a long criminal history, was one of Johnson's fellow inmates and testified that Johnson once said, "I don't remember shooting [Trooper Smalls], but I know I did it." J.A. at 1003. This statement is consistent with Johnson's contention throughout this matter, that he cannot remember any part of the events regarding the shooting of Trooper Smalls because of his profound intoxication.

Unknown to Johnson's defense counsel, Hess had contacted her defense counsel in Clarendon County, Marion Riggs, after her testimony in Johnson's first trial, but prior to Johnson's second trial. From Nebraska, Hess informed Riggs that Harbert, and not Johnson, had committed the two murders, and that she would be willing to testify to that effect. Riggs wrote a letter to the Clarendon County sheriff that informed him his client was recanting her testimony that Johnson had killed Dan Swansen. As the district court found, while Riggs' letter only mentioned Hess' recantation as to Swansen's murder, Riggs understood Hess to be recanting her testimony about both murders. J.A. at 500 & 2116-17.

The majority deems it critically important that Riggs' letter to the Clarendon County sheriff only mentioned Hess' recantation as to the shooting of Swansen in Clarendon County. Based on this fact, the majority holds that the letter cannot be deemed"material" because a jury would not have found Johnson's lack of culpability in the murder of Swansen exculpatory with respect to the murder of Trooper Smalls. The majority's analysis is incorrect for two reasons.

First, the entire Jasper County prosecution was premised on a theory that Johnson murdered Trooper Smalls in order to prevent the officer from discovering that he had previously murdered Swansen in Clarendon County. This was the reason that the prosecution presented the testimony of Stevenson, the jailhouse informant, who testified, "I asked [Johnson] why did he shoot [Smalls] and he said, because there was a dead man in the back of the RV." J.A. at 1003. Evidence that Johnson had not committed the Clarendon County murder, by itself, would have attacked the heart of the prosecution's theory in this case.

Second, had counsel for Johnson been given Riggs' letter to the Clarendon County sheriff, indicating that she recanted her testimony as to the murder of Swansen, it is certain that they would have contacted Hess in Nebraska prior to the second Jasper County trial. Once in contact with Hess, they would have learned that Hess was willing to testify that Harbert shot both Swansen and Trooper Smalls. At a deposition during the PCR proceedings, when Johnson's trial counsel was shown for the first time Riggs' letter to the Clarendon County sheriff, he responded by saying, "I think an innocent man is up there in prison." J.A. at 1936. Given that reaction to the exculpatory value

38

of this information, I am certain that had Riggs' letter been given to Johnson's trial counsel, they would ultimately have learned that Hess' most recent recollection of the events in this case implicates Harbert as the murderer, not Johnson.

At the PCR hearing, undisputed testimony established that the Clarendon County sheriff, "to the best of [his] recollection," see J.A. at 1842, passed the letter on to the chief state agent investigating the Jasper County murder. This agent was in the courtroom throughout the PCR proceedings, yet the State never called him as a witness to testify that he had not, in fact, received the letter. From this evidence, I gather that the lead agent in the Jasper County investigation was on notice that one of only two witnesses against Johnson had recanted her testimony. Under these circumstances, the law is clear that it is irrelevant, for purposes of a Brady claim, whether the exculpatory evidence is in the hands of the police rather than the prosecutor. See Boone v. Paderick, 541 F.2d 446, 450-51 (4th Cir. 1976); Barbee v. Warden, Md. Penitentiary, 331 F.2d 842, 846 (4th Cir. 1964).

The State never informed Johnson's counsel at the second trial that one of the two witnesses on whose testimony he was soon to be convicted had recanted and was willing to testify that it was the other witness against Johnson who had indeed murdered Trooper Smalls. Hess would have no motive to lie in her recantation and, in fact, her recantation could only work to her own detriment by exposing her to criminal charges of perjury for her sworn testimony during the first trial. I believe there can be no doubt that information of Hess' recantation was material, exculpatory evidence that should have been turned over to defense counsel prior to Johnson's second trial, and that the failure to do so was sufficiently prejudicial to excuse Johnson's procedural default. For this reason, I would reverse the judgment of the district court and grant the writ as to Johnson's Jasper County conviction.

IV.

It disturbs me greatly that Johnson stands convicted of murder, and is sentenced to die, based on the testimony of two persons, the first of whom has since recanted her testimony and the second of whom has now been identified as the murderer by the first. It is even more disturbing that the State may have had knowledge of the first wit-

39

ness's recantation, but concealed that information from the defense during Johnson's trial. What is unconscionable, however, is that Johnson may be put to death without any court, state or federal, ever considering the substance of his <u>Brady</u> claim because of a so-called procedural rule that purportedly waives Johnson's right to contest his conviction because of his plea for mercy before the sentencing jury. The majority's disposition of this case violates the most basic notion of fairness that our Constitution provides -- that a person not be deprived of his life without due process of law. I must, therefore, respectfully dissent.

40